## COLORADO DEVELOPMENT CO. v. CREER et al.

No. 5949.   Decided June 28, 1938.   (80 P. 2d 914.)

1

2

4

For opinion on rehearing see 96 Utah 19, 84 P. 2d 785.

*Elias Hansen,* of Salt Lake City, and *R. W. McMullin,* of Payson, for appellants.

*Wm. S. Dunford* and *R. LeRoy Tuckett,* both of Provo, for respondent.

MOFFAT, Justice.

Mandamus was granted directing the defendants James M. Creer, Carl O. Nelson and Flint C. Dixon to levy an assessment against the lands within Utah County Drainage District No. 4. The assessment directed to be levied was for the purpose of paying a judgment theretofore rendered in favor of the plaintiff and against the Drainage District.

The petition for the writ of mandamus alleges the corporate capacity of the Colorado Development Company; that the Utah County Drainage District No. 4 is a duly organized Drainage District and that James M. Creer, Carl O. Nelson and Flint C. Dixon are the duly appointed, acting and qualified members of the Board of Supervisors of such Drainage District; that the Colorado Development Company secured a judgment against the said Drainage District on January 24, 1936, for the sum of $911.62 together with costs of said action in the sum of $30.60; that an execution issued on the judgment so acquired, which execution has been returned

wholly unsatisfied; that demand has been made that defendant supervisors levy an assessment to pay such judgment but they have refused and still refuse to do so; that by reason of the wrongful refusal of the defendant supervisors to make the levy, petitioner has been required to employ counsel to bring a proceeding to enforce a levy of assessments to pay such judgment and has been required to pay an attorney's fee in the sum of $150 occasioned by the failure of the supervisors to make the levy, resulting in the necessity of employing counsel and for costs; that a writ issue directing the defendant supervisors to forthwith make an assessment on the lands within the District sufficient to pay the amount of the judgment, together with the attorney's fee and costs to be awarded in the mandamus proceeding.

Defendants filed a general demurrer to the petition for the writ. The demurrer was overruled and defendants answered. In their answers they admitted that plaintiff is a corporation; that in 1921 they, by an order of the County Commissioners of Utah County, Utah, were appointed supervisors of Utah County Drainage District No. ■ 4; they denied that they or either of them, ever qualified as such supervisors in that they did not take an oath of office or file a bond as such supervisors. They allege that they levied an assessment upon the lands within the Drainage District and that such assessment was sufficient in amount to pay the outstanding obligations of the District; that on March 10, 1932, the amount of taxes on the lands within the District amounted to approximately $2,000; that no improvements of any kind were ever constructed within the District; that for approximately fifteen years prior to the commencement of this proceeding the defendant supervisors had not acted as such, but on the contrary had abandoned their office. That at the time the judgment was recovered upon which plaintiff relies as the basis for the writ prayed for, the court rendering the same was without jurisdiction of the Drainage District because the person upon whom summons was served and those who appeared in and

defended the cause in which such judgment was rendered were not officers of the Drainage District and were without authority to appear for or represent the Drainage District in the action in which the judgment was rendered. Defendants prayed that plaintiff take nothing by its petition; that defendants be awarded costs. No reply was filed to the answer. A trial was had upon the complaint and the answers thereto. The trial court found the facts to be as alleged in the petition, in substantially the language of the petition. No finding was made as to the facts alleged in the answer, as should have been done. Judgment was rendered as prayed for in the petition. Defendants prosecute this appeal from the judgment and the whole thereof.

Defendants have assigned seventeen errors upon which they rely for a reversal of the judgment appealed from. The assignments are such as to admit of being discussed under the following headings: (1) The demurrer to the petition should have been sustained. The facts do not support the conclusions of law and the conclusions of law do not support the judgment. (2) The evidence affirmatively shows that plaintiff is not entitled to a writ of mandamus. (3) The court erred in failing to find on material allegations of defendants' answer. (4) Defendants never were de jure officers of Utah County Drainage District No. 4, and if they were, have long since abandoned such office and hence may not lawfully levy taxes on the lands within the District. (5) There is no evidence touching the question of attorney's fee in this proceeding, and therefore the court erred in awarding judgment for attorney's fee. (6) No cost bill was served or filed at the conclusion of the second trial; therefore the court erred in awarding judgment for costs. (7) The court erred in sustaining the objection to the question:

"Do you recall whether or not any determination was made as to the sufficiency of the assessment made to pay all of the outstanding warrants of the Drainage District?"

If it becomes necessary to discuss all of the points raised by appellants, above stated, we shall discuss them in the

order submitted and argued. Counsel on both sides of the controversy have so stated and argued the issues.

Should the demurrer to the petition have been sustained? The files disclose that the petition for the writ of mandamus was filed on the 13th day of February, 1937. An alternative writ was issued the same day requiring the defendants upon the basis of the allegations in the petition to assess or levy a tax sufficient to pay the judgment against the Drainage District, or show cause on February 26th, if any they had, why a peremptory writ of mandate should not issue. The alternative writ was duly served and on the 25th day of February, 1937, a demurrer was filed stating that the "petition for Writ of Mandamus does not state facts sufficient to entitle plaintiff to the relief prayed for therein or to any relief whatever."

There is nothing in the record to show that this demurrer was ever served upon opposing counsel. On the following day, February 26th, an answer was filed by and on behalf of the supervisors of the Drainage District. Admitting some and denying some of the allegations of the petition, it set up an alleged affirmative defense and was followed on February 27th by the filing of an amendment to the answer. None of these pleadings bear any evidence of having been served upon counsel for the petitioner.

We make these statements for the reason that there does not appear, either in the judgment roll or the bill of exceptions, filed in this court on August 2, 1937, any information as to what was done with the demurrer. There is found, however, in the separate files of the cause in this court a letter from the Clerk of the Fourth District Court, addressed to the Justices of this court, stating that owing to the rush to get the paper to this court on appeal, certain minute entries of the trial court were not included. It is not indicated whether the minutes, which are attached to the letter and upon a separate sheet of paper, were ordered to be included in the judgment roll. The minute entry has to do with the proceedings upon the hearing and is as follows, in part:

"Court Minutes.

"February 26, 1937

"The case was argued during the afternoon by counsel present and the motion to strike in all three matters was granted. The demurrer * * * was overruled. Proposed amendment to the defendants answer was stated * * * and same to be prepared and presented to the Court and attached to answer. Plaintiff moves to strike the whole of the respondents answer to the 1st and 2nd affirmative defenses and also to the 3rd amended defense just offered and allowed admitted by the Court."

"February 27, 1937

"* * * Hearing Resumed with the before named counsel and defendant, and Judge Elias Hansen appearing as counsel for the defendants James M. Creer and Flint Dixon. After a short recess the hearing continued. Atty., Wm. S. Dunford moved the Court to strike affirmative allegations to defendants answer etc. Judge Elias Hansen argued against said motion, and the Court concluded that there is a valid and proper judgment against the Drainage District, but parts of defendants answer was ordered stricken. Plaintiff offered Utah County Drainage Dist., #4 file, and file #9737 Civil in evidence and same were rec'd. Plfs., exhibit A and B were offered and admitted. Albert R. Hudson was sworn and examined as to records and files offered in evidence and R. E. Allen was then sworn and examined. Plaintiff rests.

"James M. Creer was then sworn, but not examined. Defendants rest. The Court found that the defendants had been duly and regularly served, answer and amendment filed Feb. 26, 1937, also a demurrer. Matters of law raised and disposed of on said date and objections were overruled and matter heard, the defendants offered no evidence. Court finds the petitioners entitled to relief prayed for including atty., fees for $150.00 and costs."

If we consider the foregoing as a part of the record on appeal for the purpose of discussion, it appears that the hearing and arriving at the issues was rather informally done, and that the petition and answer were all regarded as being before the court. The evidence introduced by both sides to the controversy as revealed by the transcript would indicate that the parties were endeavoring to get the whole situation before the court. What the issues were or what pleadings were stricken and what remained upon which the court based its judgment is not disclosed and cannot be de-

termined. The allegations in the petition, standing alone, do not state all the matters that should be stated. Much was supplied by the answer and proof.

After entry of judgment a motion to quash the writ of mandamus and a motion for a new trial were filed. The motion to quash the writ was denied. The motion for a new trial was granted. On March 26, 1937, answer of defendant James M. Creer and supplementary answer of defendant Flint C. Dixon were filed. The case was again heard on May 5, 1937, and thereafter the court made new findings of fact, conclusions of law, and judgment, and issued a peremptory writ ordering defendants to assess and levy a tax upon all the property of the District sufficient to pay the judgment. Defendants appeal.

Taking the whole record as it was presented to the court, we cannot say the court erred in overruling the demurrer at the time the order was made. Allegations of the answer show that but one assessment of drainage taxes had been levied. Further, if the assessed and equalized benefits had been exhausted by successive assessments, defendants had all the information as to such matters and could and should have so indicated to the court if such condition existed. In addition, a drainage district is a body corporate and politic with the right to sue and be sued, and to have perpetual succession (Ch. 41, Laws of Utah 1919, page 88) and as such is generally entitled to and is measured by the same considerations within its legal powers as municipal corporations (*Upper Blue Bench Irrig. Dist* v. *Continental Nat. Bank & Trust Co.*, 93 Utah 325, 72 P. 2d 1048) and falls within the matters specified by statute concerning which courts take judicial notice (R. S. Utah 1933, Sec. 104-46-1).

The findings of fact and conclusions of law are general and follow the allegations of the complaint. The complaint being insufficient standing alone, and the findings following the complaint without adding

what the answer revealed, the findings are therefore insufficient.

Appellants claim the evidence shows affirmatively that plaintiff is not entitled to a writ of mandamus. In a mandamus proceeding, where an alternative writ has been issued and an order to show cause accompanies it and defendants choose to show cause rather than obey the writ, an answer presents a different situation than an answer to a complaint. In a mandamus proceeding under an order to show cause we see no reason why the same rules should not apply as upon any other order to show cause. The purpose of the order is to give the cited party opportunity to present any matters that would tend to relieve him from yielding obedience to the order. Anything that would excuse him, whether presented in the form of written pleadings or submitted orally as was done in the instant case, may be presented. We see no reason why it should not be heard and considered by the court, and proper findings made thereon.

Whether the burden of proof or the burden of going forward is on the petitioner or on the defendant, may depend upon whether the answer or return is regarded as an answer creating the issues or as a motion to quash the alternative writ and deny the peremptory writ. In any event, the answer shows that but one assessment had been levied, that some land had been acquired by the Drainage District under sale for drainage taxes, and that nothing had been done by way of constructing drains or otherwise since the tax was levied to pay organization expenses. Whether the lands have been drained or the assessed and equalized benefits realized is a matter of defense. The argument is equivalent to saying, "We have contracted legitimate and honest debts but have failed in all duties as supervisors of the District; therefore, we should not be required to do more than we have." *Fidelity Nat. Bank & Trust Co. of Kansas City* v. *Morris*, 127 Kan. 283, 273 P. 425.

The court found the fact of an indebtedness existing against the drainage district, and that the drainage district is a duly organized and existing drainage district under the laws of the State of Utah. It is admitted and the evidence shows that the defendants "were by the County Commissioners of Utah County, State of Utah, appointed supervisors of Utah County Drainage District Number 4."

It is by answer denied that the said supervisors have ever taken an oath of office or qualified as such supervisors. Conceding this to be true, still they show that they have acted in such capacity and performed many of the duties in connection with the office and have never resigned. They are de facto officers, and no other finding could be made upon that issue. Findings should be made upon all material issues. Where under the evidence no other finding could be made than one that would support the judgment, prejudice cannot be predicated thereon. *I. X. L. Stores Co.* v. *Moon,* 49 Utah 262, 162 P. 622.

The question as to whether the supervisors had qualified or not goes only to their official status as to their right, duty and power to perform the functions they have assumed to perform as de facto officers; until the right to that office is attacked by someone claiming a superior right, their official status in this case would not be changed. The failure of the court to make specific findings as to that specific status is immaterial and to have found that they were de facto supervisors could not have changed that status. *Torsak* v. *Rukavina,* 67 Utah 166, 246 P. 367.

We have heretofore indicated that the supervisors had continued performing certain functions of their respective offices. They had never resigned. One may not at the same time perform the functions of an office and maintain successfully that he has abandoned it. *Tooele County* v. *De La Mare,* 90 Utah 46, 59 P. 2d 1155, 106 A. L. R. 182.

Laws of Utah, 1919, Ch. 41, Sec. 2046, page 89, provides that the supervisors shall each execute an official bond and shall take and subscribe to an oath to faithfully discharge the duties of their office. No oath or bond, we are told, can be found filed with the county clerk as required. Appellants therefore argue that the supervisors never became officers of the Drainage District, and that the court will not require them to do an unlawful thing; and that the statute provides that "Every person who exercises any of the functions of a public office without having taken and filed the oath of office, or without having executed and filed the required bond, is guilty of a misdemeanor." R. S. 1933, Sec. 103-26-1. This section is found in the penal code under the chapter relating to crimes against the executive power.

In so far as the exercise of power goes, the court order requires the supervisors to do no more than they have voluntarily heretofore done. It may also be further noted in Sec. 103-26-2, that it is provided:

"The next preceding section shall not be construed to affect the validity of acts done by a person exercising the functions of a public office in fact where other persons than himself are interested in maintaining the validity of such acts."

Laws of Utah, 1923, c. 48, page 102, provide:

"And upon entering the order of proclamation of record said district is hereby declared by law to be organized as a drainage district by the name mentioned in the petition, and with the boundaries fixed by the order of said board of commissioners, and said district is hereby declared to be a body corporate and politic by the name mentioned in said order of county commissioners, with the right to sue and be sued, and to have perpetual succession, and may adopt and use a corporate seal; and the board of supervisors appointed as aforesaid and their successors in office shall, from the entry of such order of proclamation, constitute the corporate authorities of such drainage district, and shall exercise the functions conferred upon them by law and shall be entitled to enter immediately upon the duties of their respective offices upon qualifying in accordance with law, and shall

hold such offices, respectfully [sic], until their successors are appointed and have qualified."

The case of *Tanner* v. *Beers*, 49 Utah 536, 165 P. 465, is cited. We think that case is not in point. There the applicant sought to require the State Engineer to approve an application which contemplated saving water by improving a privately owned ditch. The court said (page 466) :

"It seems clear that neither the state engineer nor the district court had power to grant what plaintiff demanded."

Assuming a duly organized and officered drainage district to exist, the board of supervisors thereof is vested by law, unless the authorized powers have been exhausted, with the power to do what the court ordered. In the instant case their excuse is not a want of legal power, but a neglect or failure to do another act or acts in relation to duties by law required of them to vest them with that power.

Appellants assign as error the finding of fact and judgment against them for the sum of $150.00 damages as attorney's fee, for the reason there is no evidence that plaintiff has sustained any obligation to pay any attorney's fee. Counsel for respondent assert that evidence was introduced in the first trial in respect to damages by appellants' failure to make a levy and that the court found respondent was entitled to recover its attorney's fee by way of damages. The case of *State ex rel. Shea* v. *Cocking, Mayor,* 66 Mont. 169, 213 P. 594, 28 A. L. R. 772, and cases there cited, are authority for the construction of the Montana statute, which is practically identical with R. S. 1933, Sec. 104-68-12, that in a mandamus proceeding the word "damages" includes the expense for the services of an attorney to bring the proceeding. That court says (page 596) :

"If judgment be given for the applicant, he may recover the damages which he has sustained, as found by the jury, or as may be determined by the court or referees, upon a reference ordered, together

with costs; and for such damages and costs an execution may issue; and a peremptory mandate must also be awarded without delay."

Had there been any evidence in this record as to the claim for damages or attorney's fee, that could have been considered and determined upon such evidence. A careful search of the record fails to reveal any evidence at all upon the matter of damages, as attorney's fee or otherwise.

There are authorities to the effect that the value of an attorney's services is a matter with which the judge must necessarily be familiar. When the court is informed of the nature and extent of the services added to the court's experience, the court then has all the elements necessary to fix the value of the services. *Spencer* v. *Collins*, 156 Cal. 298, 104 P. 320, 20 Ann. Cas. 49, and cases cited. In the instant case nothing is given to the court as to the nature or extent of the services, unless the court should measure the knowledge revealed by the words and records on file and the appearances of counsel. This would be insufficient without any evidence as to either the contract to pay or actual payment, when it comes to translating the service rendered by an attorney into "damages" under the section of the statute.

Should plaintiff choose to amend, it is suggested that under the provisions of Ch. 41, Laws of Utah 1919, and acts amendatory thereof, the board of supervisors may levy an assessment upon the lands of the District for two purposes:

(1) It may annually levy an assessment upon the lands within the district based upon the assessment roll of benefits for the purpose of paying the interest on the bonded indebtedness of the district, to create a sinking fund to pay the bonds of the district, to pay the current annual operating expenses of the district, and to raise the funds necessary for the year to maintain the works of the district in proper and operating order. This levy is spread over the lands in the district and apportioned to each piece according to the benefits assessed against that land as accruing to it

under the Primary Roll of Determined Benefits Assessed. Since this levy is a benefit assessment founded and based upon benefits accruing to the land by virtue of the construction of the drainage system, it cannot be lawfully levied, assessed, or collected until the construction of the drainage works has been undertaken and some benefits accrued or in approximate or immediate contemplation.

(2) There is another power granted the board of supervisors to levy an assessment or tax on lands within the drainage district. This is the provision that the board of supervisors may, for the purpose of paying the expenses, of organization of the district and the expenses incident to the district up to the construction of works to confer drainage benefits on the lands, levy an assessment not to exceed an aggregate of $1.50 per acre. This power of levy by the board of supervisors can be exercised for the purposes specified. This power can be exercised in advance of the assessment which can be made under the benefit roll for benefits conferred by the construction of the drainage district. If the drainage system is installed then the organization costs may be merged in the benefits and included in the first annual budget under the benefit assessment.

In mandamus the plaintiff must show that he has a plain right for which the law gives no adequate remedy, except mandamus, and he must further show a duty in the defendants to perform a ministerial act and this includes showing authority, ability and means to perform that act.

Plaintiff must allege facts which show its right and also the duty and authority of the defendant to act. Plaintiff in this petition fails to allege the necessary facts and alleges the conclusion that it became the duty of defendants "to levy a sufficient tax upon the taxable property with [sic] said drainage district, to pay said judgment," and does not state facts from which that conclusion can be drawn. It further fails to allege and the court fails

to find that the lands have been benefitted so as to justify an assessment or that the warrant was issued for organization and investigation expenses, or any facts to show the authority of the board of supervisors to make any levy of assessments under the statute.

As to the costs assessed, or that may be assessed in the lower court, that matter is not before us. We find nothing in the record relating to costs except the cost bill served and the judgment therefor.

Summarizing: (1) The complaint being insufficient, had the demurrer been timely and properly presented it should have been sustained. (2) It may be doubted that the evidence is insufficient to support the writ. (3) The court erred in its findings. The findings follow the allegations of the complaint and do not reflect the issues or the evidence. (4) Defendants were at least de facto officers and for the purposes of this action they are before the court as such officers of the Drainage District. (5) There is no evidence touching the question of attorney's fee. (6) and (7) have been previously disposed of.

The judgment is reversed and the cause remanded. Appellants to recover their costs.

FOLLAND, C. J., and HANSON and LARSON, JJ., concur.

WOLFE, J., concurs in result.