487 P.2d 861

**A. Curtis PAGE and Evelyn Page, his wife, Plaintiffs and Respondents,**

**v.**

**Joseph S. McAFEE and Anna A. McAfee, his wife, Defendants and Appellants.**

**No. 12390.**

Supreme Court of Utah.

Aug. 4, 1971.

Wallace D. Hurd, Salt Lake City, for defendants and appellants.

Pugsley, Hayes, Watkiss, Campbell & Cowley, Philip C. Pugsley, Salt Lake City, for plaintiffs-respondents.

HENRIOD, Justice.

Appeal from a summary judgment for plaintiffs in a quiet title action. Reversed with instructions to dismiss the complaint and enter judgment on the counterclaim. Costs to defendants.

Plaintiffs purchased defendants' property at the so-called "May Sale" [1] conducted to sell property to satisfy delinquent taxes. The county auditor must conduct

1. Title 59–10–64, Utah Code Annotated 1953.

the sale under our statute.[2] Plaintiffs then sued defendants to quiet title thereto, and defendants counterclaimed, urging that the sale was conducted by one Hibler, not the auditor, and an unqualified person. Plaintiffs conceded that he was not qualified de jure, but claimed he was a de facto deputy auditor and as such capable of conducting the sale and effectively passing title.

Mr. Hibler was a tax accountant, taking care of tax work and the preparation of tax rolls for submission to the county treasurer. He was strictly an employee of the auditor and never attained the status, de facto or otherwise, of deputy auditor or anything else.

Under the statute, it was possible that Hibler *could* have become a true deputy auditor,[3] and could have legally conducted the sale, but he never qualified as such.

Under our statute, to have become a deputy auditor, three facts were absolutely necessary:

1. His appointment must have been made in writing, which admittedly was not done;

2. Such written appointment must have been filed in the office of the county clerk, which obviously was not done;

3. He was required to take the oath, which was not done.

The statute then, in the same paragraph in crystal clear language says:

Until such appointment is *so* made and *filed* and until such deputy *shall have taken the oath of office,* no one *shall be or act as such deputy.*[4] [Emphasis added.]

Plaintiffs strongly urge that inasmuch as Hibler had been accustomed to performing some duties that the auditor was charged to do, he was a de facto officer. They cite considerable respectable authority for their position, but we are constrained not to subscribe to the employment of a couple of Latin words to circumvent the clear intent of the legislature. When a person's real property is at stake, and its title hinges on statutory construction in tax sales procedures, we are committed to two other Latin words: "strictissimi juris," which we believe, hold, and have held, to apply to a case like this.[5]

CALLISTER, C. J., and TUCKETT and CROCKETT, JJ., concur.

ELLETT, Justice (dissenting):

The plaintiffs filed this action to quiet title to land which they bought at the May

2. Title 59–10–64(4), Utah Code Annotated 1953.

3. Title 17–16–7, Utah Code Annotated 1953.

4. Sheriff of Salt Lake County v. Bd. of Com'rs, 71 Utah 593, 268 P. 783 (1928).

5. Tintic Undine Mining Co. v. Ercanbrack, 93 Utah 561, 74 P.2d 1184 (1938).

sale for delinquent taxes. The defendants, record owners of the property, filed a counterclaim asking that their title be quieted. Both parties made motions for summary judgment, and the court ruled for the plaintiffs.

There is no dispute in the evidence, and the only issue presented in this appeal is one of law.

The defendants as owners of a tract of land failed to pay general property taxes for the year 1965 and thereafter. Pursuant to statute [1] the property was on May 20, 1970, sold for taxes to the plaintiffs, who paid therefor the sum of $1557.62 by way of delinquent general taxes, penalties, and interest assessed against the land.

The defendants could have redeemed their property from the 1965 delinquent taxes by paying the same, together with penalties, interest, and costs, at any time prior to the first day of April, 1970.[2] This they did not do. By custom and practice, the record title holder is given a preference at the May sale, and he can have the land by then paying the amount due. If he does not do so, then the land is sold at auction.

The defendants point to no failure or irregularity on the part of the taxing authority regarding the manner of assessing the taxes or of the procedure followed in selling the land. They do claim, however, that the sale is invalid because it was conducted by a person not qualified to conduct a sale in that his appointment was not in writing nor had he filed a bond or subscribed to an oath of office. That claim merits careful attention, for if in fact one not authorized to conduct the May sale undertakes to do so, there would be no legal sale at all.

Our statute requires the sale to be conducted by the county auditor.[3] Admittedly the county auditor did not attend the sale. He assigned his deputy auditor to conduct it. This same deputy had conducted all such sales for the past four years and was entirely familiar with the proper procedure to be followed in connection therewith.

Section 17–16–8, U.C.A.1953, reads: "Whenever the official name of any principal officer is used in any law conferring powers or imposing duties or liabilities it includes deputies."

The defendants do not contend that the deputy failed in any way to conduct the sale according to law. They simply assert that because there was no written oath on file with the county clerk, he was not a deputy auditor. They rely on Section 17–16–7, U.C.A.1953, as their authority for

---

1. Section 59–10–64, U.C.A.1953.

2. Section 59–10–56, U.C.A.1953.

3. Section 59–10–64(4), U.C.A.1953.

claiming the deputy was not one in fact. That section provides:

> Every county, * * * officer, * *, may, by and with the consent of the board of county commissioners, appoint as many deputies and assistants as may be necessary for the prompt and faithful discharge of the duties of his office; * * * The appointment of a deputy must be made in writing and filed in the office of the county clerk. Until such appointment is so made and filed and until such deputy shall have taken the oath of office, no one shall be or act as such deputy. * * *

There was no record in the office of the county clerk of any appointment in writing by the auditor or of any oath in writing signed by the deputy, and under the law he might not be a de jure deputy and might not be entitled to draw a salary. However, it would appear that for some eight years he has been paid his salary, and no question had ever before been raised by anyone as to his official capacity. The deputy testified that an oral oath in due form was administered to him in connection with his duties as a deputy under the predecessor of the present auditor and that he did not remember if he subscribed his name to a written oath when he first began working some eight years prior to the time in question. He also testified that he was covered by a blanket bond which covered other employees in addition to himself.

Under the circumstances enumerated, it is necessary to determine whether the deputy was one de facto, and, if so, whether the sales conducted under his direction have any validity.

The law is stated in 43 Am.Jur., Public Officers, Section 469, to be:

> * * * A deputy may be an officer de facto and not de jure, for failure to qualify, as by failing to take the qualifying oath and oath of office, without invalidating his official acts as to third persons. And *an act in the name of a clerk by another person who was not a deputy, but who was in sole charge of the office, transacting the business, with the recognition of the clerk and the deputy, is that of an officer de facto.* * * * [Emphasis added.] [4]

The question of the effect of the failure to file a bond or take an oath of office is well answered in an annotation found in L.R.A.1918B at pages 1125 and 1126. It is there stated:

> It is a reasonable doctrine, and one supported by almost all the authorities, that the mere fact that one elected or appointed to an office, who discharges the duties of the office and is recognized as having a right thereto, fails to give

4. Hibler was in sole charge of the sale and was acting with the consent and under the direction of the County Auditor in the instant case.

a sufficient bond, or to execute or file the bond within the allowed time, or even fails to give any bond whatever, does not prevent his being a de facto officer. [Citations omitted.]

The same rule has been held to apply where one elected or appointed to an office failed to take the oath of office. [Citations omitted.]

\* \* \* \* \* \*

And even though one appointed or elected to an office failed either to give bond or to take an oath, it has been held that he was an officer de facto. In other words, the omission of both the bond and the oath does not prevent the application of the rule that one is an officer de facto who discharges the duties of the office under color and recognition of right thereto. [Citations omitted.]

We have a statute [5] which makes it a crime for any person to exercise the function of a public office without having taken and filed the oath of office or without having executed and filed the required bond. The next section following the one cited, however, reads:

The next preceding section shall not be construed to affect the validity of acts done by a person exercising the functions of a public office in fact where other persons than himself are interested in maintaining the validity of such acts.

Aside from statute, the general law is set out in 43 Am.Jur., Public Officers, Section 495, which reads:

The general rule is that the acts of a de facto officer are valid as to third persons and the public until his title to office is adjudged insufficient, and such officer's authority may not be collaterally attacked or inquired into by third persons affected. The practical effect of the rule is that there is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned. The principle is placed on the high ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice. Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office. They have a right to assume that officials apparently qualified and in office are legally such, even though a contest is pending. \* \* \*

In the case of Tanner v. Edwards, 31 Utah 80, 83, 86 P. 765 (1906), this court in holding that a de facto officer had no

5. Section 76–28–1, U.C.A.1953.

right to maintain an action for emoluments of office said:

> * * * His act is only valid when it concerns the public, and this upon the principle that the public is presumed to be unaware of his want of title. If he performs the services or duties, no matter how faithfully, he can maintain no action to recover the emoluments. * * *

This court has held that the statutory requirements imposing the tax and the sale of land for nonpayment thereof are to be strictly construed.[6] However, we have never before held that a tax sale conducted by a de facto officer or deputy who performs the duties of his office exactly as a de jure officer or deputy would, is invalid where all other requirements of the law have been met. I think the law is to the contrary and would hold that the tax sale in this case is not invalid because of any claimed irregularities in the appointment or qualification of the deputy auditor who made this sale.

The defendants make a further claim of invalidity of the tax sale because the deputy in his deposition said he was unaware of any account kept by the auditor known as "a delinquent tax control account." The deputy further said he was not familiar with all of the accounts kept in the auditor's office and that there might be such an account.

A copy of the record of the tax sale and a copy of the auditor's endorsements made thereon duly certified by the recorder under seal of his office is prima facie evidence of the regularity of all proceedings preliminary thereto.[7]

Since a copy of the auditor's deed was attached to the complaint and was alleged to be in compliance with the laws of the State of Utah, the burden of showing invalidity of the tax sale would be upon the defendants. The deposition of the deputy does not warrant a finding that the account was not kept.

Section 59–10–60, U.C.A.1953, reads as follows:

> The treasurer shall each year upon completion of the tax sale record notify the auditor thereof and shall also certify to him a record of the delinquent tax for the previous year upon all property not sold because it is still held by the county under preliminary sale for the delinquent taxes for some preceding year. Each item of such record shall refer to the year of original sale and to the book, page and line, or property serial number of the entry in the original

---

6. Mecham v. Mel-O-Tone Enterprises, Inc., 23 Utah 2d 403, 464 P.2d 392 (1970).

7. Section 59–10–64(7), U.C.A.1953.

tax sale record to which such item relates.

The auditor shall thereupon audit the books and records of the treasurer and shall have a final settlement with him. In making such settlement he shall credit the treasurer upon the account provided for in section 59–8–8 with the amount of taxes for the previous year which are found to be still unpaid and shall then charge the treasurer upon the books of the county in an account which shall be called the delinquent tax control account with the full amount of delinquent taxes, penalty and costs found due the county for the previous year.

In the absence of proof to the contrary, we presume the auditor performed the duties imposed upon him by law, and it would seem that whether an account was maintained under the title "delinquent tax control account" would best be known to the auditor. If such an account was set up, it would be to serve as an internal check upon the county treasurer and in no way would be of any benefit to the defendants. If they had timely paid their taxes, a sale of their land would be invalid even though the treasurer did not report the collection. These defendants make no contention that they paid their delinquent taxes or that they were in any manner prejudiced by the auditor's keeping or failing to keep the named account.

The main opinion seems to hold that if one is not a de jure deputy, he is not a de facto deputy. Mr. Hibler was designated by the de jure auditor to cry the sale as he had done for four years last past. The auditor signed the deeds on behalf of the county, and the fact that Mr. Hibler was also a tax accountant is of absolutely no consequence. He was the one acting under the direction of the auditor to cry the sale and was a de facto deputy.

An Indiana statute required the county treasurer to conduct the sale of tax delinquent sales. In the case of Hypes v. Nelson, 63 Ind.App. 304, 114 N.E. 459 (1916), the sale was actually conducted by an auctioneer under the direction of the county treasurer. The landowner there, as in the instant case, contended that the sale was invalid. The appellate court said:

> The contention of the appellant cannot be upheld. The findings of fact show a substantial if not a strict compliance with the requirements of the statute.

The prevailing opinion creates great havoc with titles of land purchased at tax sales during the last four years, and I cannot be a party to such mischief. I therefore dissent.