518 P.2d 165

**SALT LAKE HOME BUILDERS, INC., a
Utah corporation, Plaintiff
and Respondent,**

v.

**William J. COLMAN et al., Defendants
and Appellants.**

**No. 13387.**

Supreme Court of Utah.

Jan. 14, 1974.

Ned Warnock of Critchlow, Watson & Warnock, Salt Lake City, for defendants-appellants.

Lewis S. Livingston, Salt Lake City, for plaintiff-respondent.

CROCKETT, Justice:

Plaintiff sues asserting fee ownership of certain lots in the northeast of Salt Lake City as against the defendants, who claim under a county auditor's deed issued pursuant to a May sale based on failure to pay taxes. Salt Lake County was named as a party defendant, and filed a disclaimer. It was shown that the May sale was not conducted by the county auditor (or his

deputy)[1] as required by statute,[2] but by Mr. Wendell Hibler, an employee in that office. In accordance with the holding of this court in a case of similar facts, Page v. McAfee,[3] the trial court ruled that the defendants had not acquired a valid title; and gave judgment for the plaintiff, conditioned upon its reimbursing the defendants for the amount of taxes, penalties and interest thereon. Defendants appeal.

The ruling of the Page case would seem to be sufficient justification for the trial court's ruling and for the affirmance of the judgment. However, in addition to questioning the correctness of the ruling in that case, defendants make other arguments upon which we comment.

They contend: that under our statutes relating to tax proceedings, after the sale on January 15th for delinquent taxes,[4] the property owner (plaintiff) has a right of redemption only until April 1st of the fourth year,[5] and that if he fails to redeem by that date the title to the property then vests in the county; and that the plaintiff has no further ownership or interest therein. Wherefore, defendants assert that as purchasers from the county at the May sale, and/or as beneficiaries of the county's disclaimer, they should prevail over the

plaintiff's claim. In support of this argument they cite cases containing language so indicating the county's ownership after the redemption period has expired.[6]

■ We are cognizant of the language of those cases. But even though they speak about ownership by the county, they also recognize that the fee owner (plaintiff) does continue to have some interest in his property and a method of restoring full ownership to himself. In any event, that is the necessary, and the only reasonable conclusion that can be derived from an examination of our statutes. If the owner were divested of all interest in his property, and it was completely vested in the county, the owner would have no better standing than any other purchaser at the May sale. But such is not the fact.

With respect to the May sale, Section 59-10-64 provides in substance that the property shall be sold to the bidder who will pay the full amount of the taxes, penalties, interest and costs for the smallest portion of the entire parcel; and that if it is sold for a portion, the remaining part of the property "shall be deemed to have been *redeemed* by the owner thereof." It is plain to be seen that if the owner is willing to pay the amount due the county at the

---

1. Sec. 17-16-8, U.C.A.1953.
2. Sec. 59-10-64(6), U.C.A.1953.
3. 26 Utah 2d 208, 487 P.2d 861.
4. Sec. 59-10-33, U.C.A.1953.

5. Sec. 59-10-56, U.C.A.1953.
6. American Mutual Building and Loan Company v. Jones, 102 Utah 318, 117 P.2d 293 (1941) ; Utah Lead Company v. Piute County, 92 Utah 1, 65 P.2d 1190 (1937).

May sale, he can be restored to his ownership, or in effect, "redeem" his property. He is free to continue to bid that amount for a smaller and smaller fraction of the property than any other purchaser, because he will get both that fraction, and also all that is left of the property, for that amount.

■ Corroborating the idea that the owner continues to have some interest in his property until there is a valid May sale are these provisions of Subsection (6) of Section 59–10–64 relating to that sale:

Any property offered for sale as aforesaid and for which there is no purchaser shall be struck off to the county *by the county auditor*, who shall publicly declare substantially as follows: "All property here offered for sale and which has not been struck off to a private purchaser is hereby struck off and sold to the county of ―――――――, and I hereby declare the fee simple title of said property *to be vested in said county*." The county auditor shall thereupon make an endorsement opposite each of the entries . . . [describing the entry]. *The fee simple title to said property shall thereupon vest in the county*.

While there may be some overlapping of the language of this statute with the idea that the owner is required to redeem prior to April 1st, the emphasized language, that after the May sale the "property shall *thereupon* vest in the county" plainly imports that there remained in the property owner (plaintiff) some ownership interest therein. Otherwise there would be nothing left to "thereupon vest in the county."

■ From the foregoing it seems incontrovertible that the fee owner has an interest in his property which he can regain by payment of the amount due the county; and it is not of any great moment what terminology is used, right of redemption, reversion, or whatever.

■■ In supplement of defendants' argument that the entire ownership of the property vested in the county prior to the May sale, which we have just stated is not well-founded, defendants claim some advantage to themselves in the disclaimer filed by the county; and urge that even if their own deed be invalid, the title is nevertheless in the county, and not in the plaintiff. We do not see how these arguments help the defendants. The disclaimer filed by the county in this action does not redound particularly to the benefit of either the defendants or the plaintiff; conversely, it is just as much to the benefit of the one as the other. It simply gets the county out of the case, and leaves the question to be determined: who has the superior claim of title between the plaintiff and defendants. That comes down to this proposition: as pointed out above, the plaintiff owner has the underlying owner-

ship in the property, which can be reclaimed until there is a valid May sale; and this claim of ownership is superior to any asserted claim of the defendants, who have failed to acquire a valid title because of fatal defect in the taxing procedure.

■ We agree that there are many areas in the law where the status and the acts of de facto officers are deemed valid as to third parties.[7] But as in most situations, there is another side of the coin. There are also to be considered the difficulties which may sometimes result from taking for granted that any person who assumes to have authority to perform official acts and does them should be deemed to have such authority as a de facto officer. This is particularly true when it is asserted and relied on as part of the "taxing-forfeiture" procedure where the rule of strictissimi juris applies.

■ Whenever rules appear to overlap it is the responsibility of the court to determine and to apply that rule which is the more fundamental in that it best harmonizes with and carries out the purpose and policy of the law. In that regard it is appropriate to have in mind that the main purpose of all of the taxing procedures is to enforce the payment of taxes, and not the confiscation of property. Although it is true that confiscation may be the final and drastic measure, it should result only as the ultimate necessity to the accomplishment of the main objective. It is evident that that is the intent of our statutes; and consistent therewith it is also the practically universal rule of decisional law: that the sovereign (taxing authority) is required to follow procedures prescribed by law with accuracy and particularity before it can forfeit one's property.[8] In the Page case[9] we held that that standard was not met by sale of the property by one not authorized to do so; and we are not inclined to change that position.

In accordance with our discussion herein, we are not persuaded that the trial court was in error in its findings and judgment in favor of the plaintiff, conditioned upon its doing equity by making reimbursement to the defendants of all taxes, penalties, and interest paid by them. [All emphasis added.]

Affirmed. Costs to plaintiff (respondent).

CALLISTER, C. J., and HENRIOD, J., concur.

7. 43 Am.Jur., Public Officers, Secs. 469 and 495.

8. See Mecham v. Mel-O-Tone Enterprises, Inc., 23 Utah 2d 403, 464 P.2d 392, where this court affirmed judgment declaring defendant purchasers had acquired no title through a purported May sale, and stated that the courts have always been jealous to protect the rights of landowners from forfeiture unless the taxing procedures have been strictly complied with, citing other cases; see also Fivas v. Petersen, 5 Utah 2d 280, 300 P.2d 635.

9. Footnote 3 above.

ELLETT, Justice (dissenting).

For the reasons stated in my dissenting opinion in the case of Page v. McAfee[1] I am unable to agree with the prevailing opinion herein. However, I wish to give other reasons why I cannot concur in this matter.

The prevailing opinion seems to me to "curry the calf"[2] too much.

The first case cited in the opinion is that of American Mutual Building & Loan Co. v. Jones, et al.[3] That was a case wherein the county was made a party to the lawsuit. There, as in the instant matter, the county disclaimed any interest in the land in question. This Court in that case stated:

> The order of the lower court making Utah County a party was not an error. The County had good tax title. Its subsequent failure to make a valid sale did not affect its title. Plaintiff [record owner] had no title. . . .
>
> . . . The County, by disclaiming any interest in the premises, does not transfer title to plaintiff any more than to Robert Jones [the purchaser at the invalid tax sale]. . . .
>
> \* \* \* \* \* \*

In the present case, however, the County and not plaintiff was paramount owner of the property. . . . Until title is again acquired by that owner, either by redemption before a valid May sale or purchase after such a sale, the title cannot be used by the original owner as being in himself and thus a basis for constructive possession of the premises.

Section 59–10–56, U.C.A.1953, provides as follows:

> Real estate taken over by the county for delinquent taxes may be redeemed by any person having an interest at any time while the property is held by the county under preliminary tax sale prior to the 1st day of April next following the lapse of four years from the date of preliminary sale . . . Property *may not be redeemed* after the expiration of the redemption period specified. [Emphasis added.]

Since the property involved in the instant matter was sold to the county on January 10, 1963, it could not be *redeemed* after April 1, 1967. Thereafter the county could dispose of its interest only at a *valid* May sale, and if there is no valid May sale, then title is in Salt Lake County and not the plaintiff herein, and plaintiff cannot prevail in this action.

---

1. 26 Utah 2d 208, 487 P.2d 861 (1971).

2. A practice of the ancient Egyptian priests in order to make a newly-born calf resemble the old dead bull.

3. 102 Utah 318, 117 P.2d 293 (1941).

In the second case cited in the prevailing opinion is that of Utah Lead Co. v. Piute County.[4] There, a private sale was made before the final May sale, and this Court simply held that a county has no right to make a private sale until the public sale is had.

The third case cited is Mecham v. Mel-O-Tone Enterprises, Inc.[5] There, the auditor purported to sell a parcel of land for unpaid general taxes when there were no such delinquent taxes against the land. This Court said:

We, therefore, hold that a purported sale of the plaintiffs' land for non-existent delinquency in general taxes is void and conveyed no interest whatsoever to the purchasers. . . .

The last case cited in the prevailing opinion is that of Fivas v. Petersen.[6] There, the county treasurer failed to notify the taxpayer of the assessed valuation of the property[7] or of the amount of taxes assessed thereon.[8]

None of these cases has any bearing on the problem before us. The law of "strictissimi" as has been applied to tax sales in Utah in this case has been strictly observed. There is no claim of any failure of the county auditor or the county treasurer to perform his duties strictly as required by the statutes of this state or by the cases decided in this Court (except that of Page v. McAfee, supra). The only complaint made is that a deputy auditor, who had been such for eight years, had neither filed a bond nor subscribed to a written oath, nor had the auditor filed a written designation of the appointment with the county clerk. The deputy "cried the sale" under the orders of the duly elected county auditor, the money paid by the defendants was duly given to the county treasurer, and the deed which was given to the purchasers was signed by the auditor.

The case of Colorado Development Co. v. Creer [9] clearly shows that de facto officers can officiate in matters involving the assessing of taxes. There, the plaintiff obtained in the district court a writ of mandate to compel the officers of a drainage district to levy an assessment. The officers among other defenses claimed that they were not subject to the writ because they were not de jure officers of the drainage district, since they had never taken an oath of office or filed a bond as required by law. While the writ was

4. 92 Utah 1, 65 P.2d 1190 (1937).
5. 23 Utah 2d 403, 464 P.2d 392 (1970).
6. 5 Utah 2d 280, 300 P.2d 635 (1956).
7. As required by Section 59–10–9, U.C.A. 1953.
8. As required by Section 59–10–10, U.C.A. 1953.
9. 96 Utah 1, 80 P.2d 914 (1938).

quashed on other grounds, this Court disposed of the claim of lack of qualification as follows:

It is by answer denied that the said supervisors have ever taken an oath of office or qualified as such supervisors. Conceding this to be true, still they show that they have acted in such capacity and performed many of the duties in connection with the office and have never resigned. They are de facto officers, and no other finding could be made upon that issue. . . .

The question as to whether the supervisors had qualified or not goes only to their official status as to their right, duty and power to perform the functions they have assumed to perform as de facto officers; until the right to that office is attacked by someone claiming a superior right, their official status in this case would not be changed. . . .

The holding of the instant case and of Page v. McAfee, supra, is, in my opinion, wrong and not based upon reason or common sense. What these cases do is to apply the "strictissimi" idea, which this Court has heretofore applied to tax sale *procedures*, to a general law regarding all deputy county officers.[10] They in effect hold that there is no such thing as a de facto deputy auditor. If there can be no such thing as a de facto deputy county auditor,

then there can be no de facto deputy county attorney. Would anyone believe that this court would reverse a murder conviction simply because the acting deputy county attorney had not filed a written oath when he had prosecuted criminal cases under the direction of the duly elected and qualified county attorney for eight years? Or that this Court would permit the State to retry a defendant after an acquittal because the trial was a nullity? Such holdings would be consistent with the holding in this case.

I would overrule the case of Page v. McAfee, supra, reverse this case, and award costs to the appellants.

TUCKETT, J., concurs in the dissenting opinion of ELLETT, J.