**E.D. SHELLEDY, Plaintiff and Appellant,**

v.

**Edward LORE, Alan Parsons, Erin Parsons, Roy Hockin, Harry Deckered, Kent C. Bangerter, Lloyd V. McBride, David C. Kunz, and Susan S. Kunz, individuals, Merit Distributing Inc., a Utah corporation, State Tax Commission of the State of Utah, Salt Lake County, and John Does I–X, Defendants and Appellees.**

No. 900074.

Supreme Court of Utah.

April 14, 1992.

Rehearing Denied July 17, 1992.

Eric P. Hartman, Salt Lake City, for Shelledy.

R. Paul Van Dam, Salt Lake City, for Tax Commission.

Mary Ellen Sloan, Salt Lake City, for Salt Lake County.

Robert C. Liljenquist, Murray, for Deckered, Hocklin, Bangerter, Kunz, McBride, Parsons, Merit Distributing.

HOWE, Associate Chief Justice:

Plaintiff E.D. Shelledy brought this action to quiet title to real property in Salt Lake County which he purchased from the Small Business Administration (SBA), a federal agency. All defendants except the

State Tax Commission and Salt Lake County (hereinafter "defendants") claim title to the property under a tax deed issued by Salt Lake County at the May 1984 tax sale. The trial court granted summary judgment in favor of defendants, and plaintiff brings this appeal. We are called upon to determine whether Utah Code Ann. § 78–12–5.2, which provides a four-year limitation on suits against holders of tax deeds, bars plaintiff's suit.

In 1978, Clare and Virginia Pearson, then owners of the subject property, failed to pay the general property taxes for that year. As a result, the property was sold to Salt Lake County at the preliminary tax sale on January 15, 1979, pursuant to Utah Code Ann. § 59–10–33 (current version at § 59–2–1336 (Supp.1991)). That preliminary sale triggered a four-year redemption period during which any person with an interest in the property could redeem the property by paying into the county treasury the amount due the county, all taxes subsequently assessed and all interest, penalty, and costs that have accrued. Utah Code Ann. § 59–10–56 (current version at § 59–2–1346 (Supp.1991)).

In January 1981, two years after the preliminary sale, the Pearsons conveyed their interest in the property by quitclaim deed to the SBA. Neither the Pearsons nor the SBA paid the delinquent taxes at that time. Notwithstanding the tax-exempt status of the SBA, Salt Lake County continued to levy taxes against the property for the 1981, 1982, and 1983 tax years.

By May 1984, the redemption period had run and the delinquent taxes had not been paid. Consequently, the County conveyed the property by tax deed at the final May tax sale to defendant Edward Lore for $6,958.38.[1] This amount represented delinquent property taxes for 1978, 1980, 1981, 1982, and 1983, as well as the interest, penalties, and costs which had accrued during those years. Subsequently, Lore conveyed an undivided interest to each of the other defendants. These new owners failed to pay the 1984 property taxes, and on January 15, 1985, the tract was again sold to the County at the preliminary tax sale and another four-year redemption period began to run.

In December 1988, nearly five years after the May 1984 tax sale, SBA conveyed its interest in the property to Shelledy. Three months later, Shelledy brought this action in the district court below to quiet title to the property against defendants who claimed title under the 1984 tax deed. By this date, the second redemption period had run and final sale of the property was pending at the May 1989 tax sale. To redeem the property, Shelledy paid under protest $6,007.39 into the county treasury. This sum represented the property taxes, interest, penalties, and costs owing for 1984, 1985, 1986, 1987, and 1988 which defendants had failed to pay.

Both plaintiff and defendant Salt Lake County filed motions for summary judgment. Plaintiff contended that while the tax liens for 1978 and 1980 remained valid after the SBA acquired the property in 1981, the sovereign immunity status of that agency barred the County from enforcing the liens and making future assessment of taxes against the property. Therefore, plaintiff argued, the 1984 tax sale was void. Shelledy urged the trial court to quiet title in his favor and award him the $6,007.39 he had paid under protest in 1989, less the amount of delinquent taxes owing on January 17, 1981, the date the SBA acquired title from the Pearsons.

On the other hand, Salt Lake County contended that the SBA did not acquire title from the Pearsons, but only the right to redeem the property. It argued that this right was extinguished when the SBA failed to redeem within four years after the 1979 preliminary sale and, therefore, that the County had the right to sell the property at the May 1984 tax sale. In addition, it

---

1. Property "held by the county under preliminary tax sale" is sold at the final May sale "following the lapse of four years from the date of the preliminary sale." Utah Code Ann. § 59–10–56 (current version at § 59–2–1346 (Supp. 1991)). Here, the preliminary sale occurred in January 1979; therefore, the property apparently should have been sold at the 1983 final May tax sale rather than at the 1984 tax sale. The facts are unclear as to the reason for this delay.

asserted that Shelledy's suit was barred by the four-year statute of limitation for challenging tax deeds, Utah Code Ann. § 78–12–5.2,[2] and that Shelledy lacked standing to assert the immunity from taxation enjoyed by the SBA.

■ The trial court granted the County's motion for summary judgment for the above reasons advanced by the County. However, the court granted Shelledy a lien against the property for the $6,007.39 he paid under protest. Shelledy appeals from that judgment.[3] Because he appeals from a grant of summary judgment, we view the facts in a light most favorable to him and review the legal conclusion of the trial court for correctness, affording it no deference. *Blue Cross and Blue Shield v. State,* 779 P.2d 634, 636 (Utah 1989).

■ At the outset, it should be observed that we have held that following the preliminary tax sale, the property owner, although he is delinquent in his real estate taxes, maintains the underlying ownership interest in the property. *Salt Lake Home Builders, Inc. v. Colman,* 30 Utah 2d 379, 382–83, 518 P.2d 165, 167 (1974). Therefore, the quitclaim deed from the Pearsons to the SBA vested in the SBA fee simple title. Moreover, Utah Code Ann. § 59–10–64(6) (current version at § 59–2–1351(7) (Supp.1991)) indicates that fee simple title to property does not vest in the county unless it purchases it at the May tax sale. As to property which is listed for sale but not purchased by a private party at the final tax sale, the statute provides:

> The county auditor shall thereupon make an endorsement opposite each of the entries in the tax sale record … substantially as follows: "The fee simple title to the property described in this entry was on the ___ day of May, 19___, sold and conveyed to the county of ___ in

payment of general taxes charged against the same," and shall sign his name thereto. *The fee simple title to said property shall thereupon vest in the county.*

(Emphasis added.) Thus title remains in the record owner following the preliminary sale; otherwise, there would be nothing to vest in the county after the May tax sale. *See Salt Lake Home Builders,* 30 Utah 2d at 382, 518 P.2d at 167. The trial court erred in concluding otherwise, but that error does not affect its decision.

The SBA is a federal agency entitled to the "full sovereign immunity of the United States." *United States v. Mel's Lockers, Inc.,* 346 F.2d 168, 169 (10th Cir.1965). In support of Shelledy's contention that this immunity barred the County's attempt to enforce the prior tax lien for 1978, he relies on the United States Supreme Court decision of *United States v. Alabama,* 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941), a factually similar case. The United States brought suit to quiet title against Alabama, seeking a "decree declaring the liens, tax sales and certificates of purchase to be invalid and enjoining the State from asserting its claims." 313 U.S. at 277, 61 S.Ct. at 1012, 85 L.Ed. at 1330. The United States contended that it was entitled to this relief by virtue of its sovereign immunity. 313 U.S. at 279, 61 S.Ct. at 1013, 85 L.Ed. at 1331.

The Court determined that the liens were valid, finding "no reason why the United States … should stand, so far as the existence of the liens is concerned, in any different position from that of other purchasers of lands … who take conveyances on and after the specified tax date." 313 U.S. at 282, 61 S.Ct. at 1014, 85 L.Ed. at 1332. The Court went on to hold, however, that the sovereign immunity of the United

**2.** In pertinent part, section 78–12–5.2 reads:
No action or defense for the recovery or possession of real property or to quiet title or determine the ownership thereof shall be commenced or interposed against the holder of a tax title after the expiration of four years from the date of the sale, conveyance or transfer of such tax title to any county, or directly to any other purchase thereof at any public or

private tax sale and after the expiration of one year from the date of this act.

**3.** On appeal, Salt Lake County is the only defendant to submit a brief. Six defendants whose title to the property was contingent upon the validity of the May 1984 tax sale joined the County's brief, claiming that it set forth all the arguments they had planned to raise.

States barred the county's attempt to enforce the prior liens by tax sale. The Court reasoned:

With respect to the tax sales the case has a different aspect. The proceedings in the county court for the sale of the lands were taken and the decrees were rendered after the United States had become the owner of the tracts. A proceeding against property in which the United States has an interest is a suit against the United States ... and in the absence of its consent to the prosecution of such proceedings, the county court was without jurisdiction and its decrees, the tax sales and the certificates of purchase issued to the State were void.

313 U.S. at 282, 61 S.Ct. at 1014, 85 L.Ed. at 1332–33 (citation omitted). Thus, the Court held that while the acquisition of property by a sovereign entity did not destroy the validity of a prior lien, it rendered the lien unenforceable absent the consent of the sovereign entity.

*Alabama*, however, is not dispositive here. The SBA is not a party to this action because it no longer has an interest in the property. The SBA may have been able to avoid the 1984 tax sale of its property on the authority of *Alabama*, but it did not attempt to do so.

Plaintiff now contends that he has standing to assert the SBA's immunity from taxation and thereby prevent the four-year statute of limitations contained in section 78–12–5.2 from running against him. As a general rule, courts do not permit a party to assert the constitutional rights of a third party. *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed.2d 1586, 1594 (1953); *State v. Harding*, 576 P.2d 1284, 1285 (Utah 1978); *Kemmerer Coal Co. v. Brigham Young University*, 723 F.2d 54 (10th Cir.1983). The general rule is that a litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 355 (1975) (citations omitted). However, a party may assert the constitutional rights of a third party if certain factors are met: "first, the presence of some substantial relationship between the claimant and the third parties; second, the impossibility of the rightholders asserting their own constitutional rights; and third, the need to avoid a dilution of third parties' constitutional rights that would result were the assertion of jus tertii not permitted." Note, *Standing to Assert Constitutional Jus Tertii*, 88 Harv. L.Rev. 423, 425 (1975). *See generally* Henry P. Monaghan, *Third Party Standing*, 84 Colum.L.Rev. 277 (1984); Lawrence H. Tribe, *American Constitutional Law* § 3–19 (2d ed. 1988).

None of the above are present in the instant case. No substantial relationship exists between Shelledy and the SBA; the SBA has never been precluded from asserting its immune status; and finally, there has been no dilution of Shelledy's constitutional rights.

In *Frederiksen v. LaFleur*, 632 P.2d 827, 831 (Utah 1981), we held that "tax purchasers may avail themselves of the special statute of limitation regardless of either the invalidity of their tax title or their inability to establish an affirmative claim to title apart from their tax title." We expressly reserved voicing any opinion "on whether the special statute of limitations could protect a tax title acquired by means repugnant to fundamental fairness or whether such an application of the statute would exceed the limits of statutory intent or constitutional permissibility." *Id.* at 831 n. 14. Later, the United States Court of Appeals for the Tenth Circuit in *Kemmerer Coal*, 723 F.2d at 57, held that under Utah law the four-year statute of limitation barred an attack on a tax deed held by Brigham Young University. Kemmerer Coal Co., which had succeeded to the interest of San Rafael Fuel Co., attacked the tax deed because of the lack of notice of the tax assessment to the owner, San Rafael. There, the court wrote:

We need not decide whether the analysis in [*Saranac Land & Timber Co. v. Roberts*, 177 U.S. 318, 329–31, 20 S.Ct. 642, 647, 44 L.Ed. 786, 792–93 (1900)] would survive current constitutional jurispru-

dence, however, because Kemmerer itself has suffered no due process injury. If a constitutional violation occurred, it was the taking of *San Rafael's* property without due process. Kemmerer thus seeks to advance its claim by asserting a third-party's constitutional rights....

We believe the Utah Supreme Court would hold that Kemmerer has no standing to assert a third-party's constitutional rights under the facts of this case. While it may have been "repugnant to fundamental fairness," *Frederiksen,* 632 P.2d at 831 n. 14, to deprive San Rafael of its property without proper notice, we do not believe it fundamentally unfair to apply the statute of limitations to Kemmerer who bought the coal lands in the face of record notice of a rival claim to "underground rights."

*Id.* at 57–58 (citations omitted). The Tenth Circuit made an accurate forecast.

When Shelledy purchased the property from the SBA in 1988, he was on record notice of defendants' rival claim to the property by virtue of the 1984 tax deed. Therefore, we hold that Shelledy lacks standing to assert the SBA's constitutional rights and defense.

Our statutory definition of "tax title" is, in relevant part:

> "[T]ax title" ... means any title to real property, *whether valid or not,* which has been derived through or is dependent upon any sale, conveyance, or transfer of property in the course of a statutory proceeding for the liquidation of any tax levied against the property whereby the property is relieved from a tax lien.

Utah Code Ann. § 78–12–5.3 (emphasis added). To give full effect to the above statute, it makes no difference if the tax title is valid. Once the four-year statute of limitation has run, the tax title cannot be attacked. Such interpretation is entirely consistent with our decision in *Frederiksen.* As we stated in that case, the reason for this statute of limitation on tax deeds is "to give increased stability to tax titles and thereby augment the revenues of state and local governments...." 632 P.2d at 828.

We see no reason to depart from our precedent.

Because Shelledy paid under protest the $6,007.39 in delinquent taxes, interest, and penalties owing on the property as of March 1989 and thereby redeemed the property for defendants, Shelledy is entitled to a lien on the property for that amount plus interest. The judgment of the trial court is affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.