COMMERCIAL UNION INSURANCE COMPANY
OF AMERICA *v.* Juanita T.
HENSHALL and Steve JAGGARS

76-387                                              553 S.W. 2d 274

Opinion delivered July 18, 1977
(In Banc)

*Plegge, Lowe & Whitmore,* for appellant.

*Smith, Williams, Friday, Eldredge & Clark,* by: *J. D. Watson,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellees brought this declaratory judgment action to determine their insurer's duties, under a homeowner's policy, to defend a personal injury action on their behalf and to pay any damages that might ensue. The trial court held, after a hearing and consideration of stipulated facts, a deposition of appellees and certain exhibits, that appellant-insurance company had both a duty to defend and a duty to pay damages that may be recovered by the injured party.

The insurer appealed, urging, as points for reversal, that its duty to defend is determined by the allegations in the complaint filed by the injured party; that only the injured party may change the allegations in his complaint, which cannot be varied by affidavits of the insured; that the homeowner's insurance policy excludes from coverage injuries connected with business; and the injured party alleged that he was a business invitee and, therefore, was within the exclusion.

The allegations in the pleading filed by Dr. Benjamin C. Alstadt, the allegedly injured party, which are pertinent to the issues before this court are: he was a business invitee upon the premises of the Jaggars Audio Production Studio at 6720 Mabelvale Cut-Off, which is operated by the defendant, Steve Jaggars, the defendant Mrs. Arthur C. Henshall, being the owner of the real property on which the studio is located; Dr. Alstadt was on the premises of the defendants for business purposes; while in the course of transacting this business the plaintiff tripped and fell over a wire fence strung by the defendants in the yard of the premises causing severe injuries to the plaintiff; that the defendants knew, or should have known, that the wire fence created a dangerous condition for the plaintiff and should have removed said wire fence before allowing a business invitee to walk in the area.

The homeowner's policy pertinent to this action was issued to Mr. Arthur C. and Juanita T. Henshall and covered their residence and appurtenant structures at 6720 Mabelvale Cut-Off. On the "daily report," which had appropriate boxes to be checked for coverage and rate making purposes, certain exceptions were listed. One of these was an exception for a business operated on the premises. The appropriate box was not checked to indicate that a business was being operated on the premises. The policy provided under Coverage E — Personal Liability, that the company would pay on behalf of the insured all sums which they should become legally obligated to pay as damages because of bodily injury or property damage, to which the insurance applies, caused by an occurrence. Occurrence was defined as an accident, including injurious exposure to conditions, which results in bodily injury. Coverage E further provided that the insurance company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent.

The policy provides, as an exclusion, that it does not apply under Coverage E — Personal Liability to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits.

The deposition and exhibits reveal that Mrs. Henshall was the owner of the real property at 6720 Mabelvale Cut-Off and that she, her husband and appellee Steve Jaggars, who is her father, shared a home on the premises. A short time before the alleged injury occurred Mr. Jaggars had built a concrete block building on the rear portion of the lot (a corner lot) and had opened a sound recording studio therein. He had been in the sound recording business for some years and from time to time had recorded music for Dr. Alstadt. On the day the alleged injury occurred Dr. Alstadt had visited the studio to have Mr. Jaggars record a song he had written. After they were finished with the recording Dr. Alstadt left the building but mistakenly left his music behind. He came back, after dark, to retrieve the music. He found the studio closed and locked. He made his way to the Henshall back

door, knocked, and when Mr. Jaggars answered the door he asked Jaggars for his music and then left. The next day Dr. Alstadt phoned Mr. Jaggars and reported that when he was on the premises he had fallen and broken his arm. Jaggars did not know where or when Dr. Alstadt was injured but surmised that he had tripped and fallen over the fence before he knocked on their door. He thought he remembered the doctor stating that he had fallen but was not sure. He thought the doctor must have fallen over the portion of the fence near the carport and the back door of the house.

A diagram of the premises showed that the two buildings were separated by a carport and that a wire fence was located a few feet beyond the end of the carport on the far side of a side door to the studio. The back door of the residence opened on the carport. Jaggars stated that the fence was built as an enclosure for a small dog. From the diagram, it appears to completely encircle the area beside the house and in back of and beside the studio. A photograph shows a fence beside the parking lot and extending to the side street on which the studio faces.

Appellant argues that, because Dr. Alstadt alleged in his complaint that he was a business invitee, it has no duty to defend the action because injury to a business invitee is excluded as "injury . . . arising out of business pursuits of any insured." In making this argument, appellant relies upon the general rule that its duty to defend is determined from the allegations of the complaint filed against the insured. See *Equity Mutual Insurance Co.* v. *Southern Ice Co.,* 232 Ark. 41, 334 S.W. 2d 688. But in *Proctor Seed & Feed Company* v. *Hartford Ins. Co.,* 253 Ark. 1105, 491 S.W. 2d 62, we observed that there may be situations where the insurance company's duty to defend cannot be determined simply from the allegations of the complaint. This is such a case.

The insurance company may not close its eyes to facts it knew or should have known, because they were easily ascertainable. Information from the insured and a simple inspection of the property would have disclosed facts which would have raised questions not only as to the status of Dr. Alstadt but as to the nature of the activities involved. Dr. Alstadt

came to the premises after business hours to retrieve a forgotten article and it is quite likely that his injuries occurred, not on the part of the premises devoted to business pursuits, but on the premises of appellees' home and that both his "activities" and whatever "activities" of appellees are relied upon as negligent acts or omission, are ordinarily incident to non-business pursuits.

The courts strictly interpret exclusions from insurance coverage and resolve all reasonable doubts in favor of the insured who had no part in the preparation of the contract. *Security Ins. Co. of Hartford* v. *Owen,* 252 Ark. 720, 480 S.W. 2d 558; *First Pyramid Life Ins. Co. of America* v. *Thornton,* 250 Ark. 727, 467 S.W. 2d 381. The phrase "injury . . . arising out of business pursuits" does not necessarily exclude any person who comes upon the property because business activities are conducted thereon. Our examination of the authorities discloses that the clause is a fairly common one in homeowner's policies, but we have found no case giving it as broad an interpretation as that appellant urges on us. See cases annotated in 12 Couch on Insurance 2d § 44.516 (Supp. 1976). Appellant, on whom rests the burden of demonstrating error of the trial court, has not directed us to any such authority. It would not have been difficult for appellant to have written a policy excluding any business invitee from coverage. It did so, in an exclusion from coverage F, by excluding bodily injury to "any person while on the insured premises because a business is conducted or professional services are rendered thereon." By a few apt words, it could have made it clear that the exclusion relied upon is as broad as it now contends it is. See *Aetna Cas. & Sur. Co.* v. *Sengal,* 183 Ark. 151, 35 S.W. 2d 67. Where the policy provisions are susceptible of two interpretations, that most favorable to the insured must be adopted. *Aetna Cas. & Sur. Co.* v. *Sengal,* supra. In case of doubt provisions of the policy will be construed most strongly against the insurer. *American Indemnity Co.* v. *Hood,* 183 Ark. 266, 35 S.W. 2d 353. We cannot say that coverage is excluded simply because Dr. Alstadt was a business invitee, if indeed he was.

Since liability for the alleged injury is not necessarily excluded from coverage because the injured party may have

been a business invitee we must consider whether the appellant is otherwise excused from its duty to defend. Dr. Alstadt, in his pleading, did not allege that the fence was connected in any way with a "business pursuit." But he did allege that the fence was on the "premises" of the business; therefore, it might be inferred that the fence was so connected with a business pursuit as to come within the exclusion. It is not necessary that we make this determination solely on the basis of the complaint and the policy. It was shown at the trial of this case that the fence was not solely on the "premises" of the Jaggars studio, but that it was on the "premises" adjacent to the insured's home and that this is where the injury probably occurred.

The Jaggars studio, as revealed by photographs and the deposition, was located in a separate building from the home. The equipment used in the business consisted of tape recorders, mixing consoles, reverberation units, duplicating equipment, such as cassettes and reel to reel playback equipment, amplifiers, speakers and studio facilities, none of which were demonstrated to have any relationship with the fence. Appellees deposed that the fence was used as an enclosure for their dog.

Although appellant complains that its rates were based on the supposition that it was solely residential property, there was no evidence that the rate would have been different had the property's dual function been noted. The burden of proof is on the insurer to show that an injury was caused by an excepted event. *Financial Sec. Life Assur. Co.* v. *Wright*, 254 Ark. 791, 496 S.W. 2d 358; *Lynch* v. *Travelers Indem. Co.*, 452 F. 2d 1065 (8 Cir., 1972).

The duty to defend is broader than the duty to pay damages and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage. *Carter* v. *Aetna Cas. & Sur. Co.*, 473 F. 2d 1071 (8 Cir., 1973). We do not yet know whether the portion of the fence Dr. Alstadt fell over was the one connected to the home and there was no evidence that the other parts of the fence served the same purpose as the part referred to in the deposition. The facts have not been fully developed and will

124

not be until the personal injury action is tried. However, appellees did present a prima facie case of coverage from which the duty to defend resulted.

The judgment is affirmed insofar as appellant's duty to defend is concerned, but that portion of the judgment holding that appellant must pay any damages recovered against insured is reversed as determination of that question must be postponed until after the facts are developed at trial of the personal injury action.