The HOME INDEMNITY COMPANY *v.* The CITY OF MARIANNA, ARKANSAS, et al.

86-194                                            727 S.W.2d 375

Supreme Court of Arkansas
Opinion delivered April 13, 1987
[Rehearing denied May 11, 1987.]

*Lovett Law Firm*, by: *Mel Sayes*, for appellant.

*Daggett, Van Dover, Donovan & Cahoon*, by: *Robert J. Donovan*, for appellee.

STEELE HAYS, Justice. This appeal by The Home Indemnity Company is from a summary judgment granted to the City of Marianna ordering Home to defend the city under a policy of liability insurance issued by Home.

Marianna, its mayor and aldermen, were defendants in a pending federal suit brought by a group of Marianna black voters alleging violations of the Voting Rights Act of 1965 and asking that the Marianna election system be declared unlawful and any further implementation of the city's redistricting plan of 1982 be enjoined. The suit asked for court costs, necessary expenses of

litigation, attorneys fees, and "such other relief as may be just and equitable."

Marianna called on Home and the Arkansas Municipal League, administrator of the Municipal Legal Defense Program, to defend it in the federal suit. When both Home and the League refused, a declaratory judgment action was filed by Marianna.

The trial court denied the city's motion for summary judgment against the League, but granted Marianna's motion for summary judgment against Home. Home and Marianna brought separate appeals. We recently sustained the summary judgment granted to the League, see *City of Marianna* v. *Arkansas Municipal League, Administrator, Municipal Legal Defense Program*, 291 Ark. 74, 722 S.W.2d 578 (1987), and by this opinion we affirm the summary judgment on behalf of Marianna against Home.

Home's policy — termed a public officials errors and omissions policy — covers causes of action accruing between August 30, 1982 and August 30, 1985. However, prior acts occurring after August 30, 1979 are covered by endorsement. The policy obligates Home to pay damages and to defend suits for damages resulting from wrongful acts occurring within the period covered.

Home argues it was error to grant summary judgment because the suit in federal court was not a suit for damages. Home's policy states it will pay "all sums which the insured shall become legally obligated to pay as damages because of any WRONGFUL ACT which occurs during the policy period and arises out of the discharge of duties by an insured on behalf of a public entity." The policy also states Home has "the right and duty to defend any suit against the insured seeking damages for claims to which this insurance applies, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . ."

Home relies heavily on the fact that the federal plaintiffs seek no damages, merely injunctive and declaratory relief, along with costs, expenses and attorney's fees. Home cites a variety of sources in support of the argument that attorney's fees and court

costs are not ordinarily viewed as damages. We readily agree that such expenses are not normally regarded as damages. But we do not agree that issues basic to insurance coverage can properly turn on what "ordinarily" pertains. Certainly the coverage itself was never intended to stand or fall on terms which are subject to differing interpretation. Moreover, we find some elasticity in the word "damages." In *Nat Harrison Associates, Inc.* v. *Gulf States Utilities Co.*, 491 F.2d 578 (5th Cir. 1974) it was said, "It has long been the general rule that attorney's fees may be recovered *as an item of damages* (emphasis supplied) where specifically authorized by statute or contract. *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U.S. 714 (1967)." And see *Garratt* v. *Kendall*, 212 Ark. 210, 205 S.W.2d 192 (1947); *Stocker Hinge Mfg. Co.* v. *Darrell Industries, Inc.*, 99 Ill. App. 3d 340, 425 N.E.2d 550 (1981); *Flinkote Co.* v. *Presley of Northern California*, 201 Cal. Rept. 262, 154 C.A.3d 458 (1984); *Herris* v. *Krasne*, 302 P.2d 289 (Cal. 1956); *O'Sullivan* v. *Dist. Ct. of Fergus County*, 256 P.2d 1076 (Mont. 1953); *Manko* v. *City of Buffalo*, 187 Misc. 471, 67 N.Y.S. 2d 101 (1946); *Swaner* v. *Union Mortgage Co.*, 105 P.2d 342, 99 Utah 298 (1940); *Cornelison* v. *U.S. Bldg. & Loan Assn.*, 292 P.2d 243, 50 Idaho 1; *Col. Dev. Co.* v. *Creer*, 80 P.2d 914 (Utah 1938); *Employers' Indemnity Corp.* v. *Southwest National Bank*, 299 S.W. 676 (Tex. 1927). Furthermore, Home could easily have eliminated the uncertainty by defining "damages" in its policy. It chose not to do so and we are unwilling to deny coverage on that equivocal ground.[1]

Turning elsewhere for guidance, we find cases on both sides of the issue. In *Aetna Casualty and Surety* v. *Hanna*, 224 F.2d 499 (5th Cir. 1955), the District Court, applying Florida law, held there was no liability by Aetna to its insureds, the Hannas, under a comprehensive personal liability policy requiring Aetna "to pay damages." The Hannas were sued by adjoining landowners to remove boulders and fill materials and to erect a retaining wall on low-lying property or be subject to an assessment of damages. Aetna refused to defend and after the litigation was

---

[1] It should not be assumed that we are deciding whether attorney's fees, should they be allowed in the federal case, are damages within the meaning of the policy. That is not before us.

concluded with no assessment of damages, the Hannas sued Aetna. The court held there was no coverage under the policy against mandatory injunctive orders and to so construe the unambiguous language of the policy would do violence to its plain provisions.

In *Ladd Construction Co.* v. *Insurance Co. of North America*, 73 Ill. App. 3rd 43, 391 N.E.2d 568 (1979), INA provided coverage to Ladd under a multiple liability policy obligating INA to pay "all sums which the insured shall become legally liable to pay as damages" and to defend such claims. Burlington Railroad sued Ladd for a mandatory injunction to remove slag from its right-of-way and "for such other relief as equity and conscience require." Citing *Hanna* and rejecting *Doyle* v. *Allstate, infra*, the Illinois Court agreed with INA that the policy covered only payments to third persons having a legal claim for damages.

In *Desrochers* v. *New York Casualty Co.*, 106 A.2d 196 (N.H. 1954), it was held that the cost of complying with a suit for injunctive relief was not to be considered as damages within the meaning of a comprehensive liability policy.

In *Doyle* v. *Allstate Ins. Co.*, 154 N.Y.S.2d 10 (Ct. of App. of N.Y. 1956) and *United States Aviex Co.* v. *Travelers Ins. Co.*, 336 N.W.2d 838 (C.A. Mich. 1983), a different result was reached. In the latter case, Aviex was notified by the Michigan Department of Natural Resources that Aviex would be required to investigate the extent of toxic contamination to underground water resulting from a fire at Aviex's chemical manufacturing facility. Aviex was insured by Travelers under a policy which obligated Travelers to pay on behalf of Aviex all sums which the insured shall become obligated to pay ". . . as damages because of . . . property damage." Travelers denied coverage as to any contamination of water because no claim for damages had been presented.

Aviex spent approximately $80,000 in testing expenses and in obtaining estimates of the costs of cleanup. In Aviex's declaratory suit against Travelers the trial court held Travelers was obligated to defend any claim or action and to pay for any damages, including reimbursement of the testing expenses incurred by Aviex. The appeals court affirmed the trial court on

Travelers appeal. The opinion carefully examines *Hanna, Ladd* and *Desrochers, supra*, and rejects them as interpreting "damages" too narrowly:

> If the state were to sue in court to recover in traditional "damages", including the state's costs incurred in cleaning up the contamination, for the injury to the groundwater, defendant's obligation to defend against the lawsuit and to pay damages would be clear. It is merely fortuitous from the standpoint of either plaintiff or defendant that the state has chosen to have plaintiff remedy the contamination problem, rather than choosing to incur the costs of clean-up itself and then suing plaintiff to recover those costs. The damage to the natural resources is simply measured in the cost to restore the water to its original state.

In *Doyle* v. *Allstate, supra*, Allstate issued a comprehensive personal liability policy to Doyle by which Allstate undertook to pay all sums Doyle might become legally obligated to pay as damages because of bodily injury, sickness or disease and to defend any suit seeking damages "on account thereof, even if such suit is groundless, false or fraudulent." While coverage was in effect, suit in equity for an injunction was brought against Doyle by neighboring landowners named Markle, asking that Doyle be permanently restrained from operating a dog kennel on his property and seeking "such other and further relief as to the court may seem just and equitable besides the costs and disbursements of this action."

Allstate refused to defend and Doyle successfully defended at his own expense and then sued Allstate. Doyle's motion for summary judgment was denied by the trial court and affirmed on appeal to the Appellate Division of the Supreme Court. Before the Court of Appeals those orders were reversed. The opinion notes that if the Markles had established their right to equitable relief, damages could have been awarded to them which Doyle would have been legally obligated to pay.

> The policy does not draw any distinction between damages awarded by a court of law and those awarded by a court of equity. [Doyle] was justified in expecting that if suit was instituted against him wherein he might be legally obli-

gated to pay a sum of money as damages because of his operating a dog kennel, the insurer would defend. It is of no moment that such a judgment was not actually obtained against [Doyle]. [Allstate] was obligated to defend against the possibility thereof "even if such suit is groundless, false or fraudulent."

It might be possible to agree with the *Ladd* and *Hanna* courts if Home's policy was essentially identical to those. The *Hanna* court expressly observed that Aetna's obligation to pay damages was "plain and unambiguous," whereas, Home's policy presents contradictions. The language of the insuring clause seems clear enough. As we have noted, it obligates Home to pay "all sums which the insured shall become legally obligated to pay *as damages* (our emphasis) because of any WRONGFUL ACT which occurs during the policy period and arises out of the discharge of duties by an insured on behalf of a public entity." But the endorsement pertaining to prior acts makes no mention of damages, it simply extends liability "to include *any wrongful act* which occurred on or after the retroactive date shown hereon . . . provided the insured had no knowledge prior to the inception date of this policy of *the wrongful act* to which this endorsement applies." (Our emphasis.)

It will be seen at once that liability is extended to include any wrongful act without qualification, which leaves at best an ambiguity in the policy. Nor can we sublimate the language of the endorsement in favor of the policy proper, as we are required to gather the intention of the parties from the entire contract and not from detached provisions. *Pate v. USF&G*, 14 Ark. App. 133, 685 S.W.2d 530 (1985); *Shepherd v. Mutual Life Ins. Co. of NY*, 63 F.2d 578 (C.A. 5th 1938); *Continental Casualty Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971). Ambiguous provisions are to be construed most strongly against the insurer, which drafts the policy. *Drummond Citizens Ins. Co. v. Sergeant*, 266 Ark. 611, 588 S.W.2d 419 (1979); *State Farm Mutual Auto Ins. Co. v. Traylor*, 263 Ark. 92, 562 S.W.2d 595 (1978).

Whether we view the endorsement and the policy as having equal status, although ambiguous, or view the endorsement as controlling under the general rule that where the two are

contradictory the endorsement governs, (see *Continental Casualty Co.* v. *Phoenix Construction Co.*, 296 P.2d 801, 57 A.L.R.2d 914 [Col. S. Ct. 1956]; 44 Corpus Juris Secundum, Insurance, § 300, p. 1208), the result is the same — the uncertainty must be resolved against the insurer. *American Indemnity Company* v. *Hood*, 183 Ark. 266, 35 S.W.2d 353 (1931).

Another distinction between this case and the *Hanna* and *Ladd* cases is found in the fact that in those cases the injunctive suits had concluded without an award of damages and, hence, it was an accomplished fact that damages were not sought against the insured. In our case the appellees, as defendants in the federal suit, are still potentially exposed to that possibility until the litigation is concluded. It is settled that damages are recoverable under Section 1983 of the Civil Rights Act (42 U.S.C. 1983) *Carley* v. *Piphus*, 435 U.S. 247 (1978), and the Federal Rules of Civil Procedure, Rule 54(c) give the trial court the authority to grant full relief to which the successful party is entitled:

> Except as to a party against whom a judgment is entered by default, every final judgment *shall* grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. (Emphasis added).

This principle of potential exposure was applied in an analogous situation in *Thomas* v. *Appalachian Ins. Co.*, 335 F.2d 789 (5th Cir. 1976). There the insured, a police officer, was sued only for punitive damages for "intentionally and maliciously" using excessive force in arresting the plaintiff. The insurer refused to defend because the policy excluded coverage as to punitive damages. While conceding that punitive damages did not come within the coverage of the policy, the court rejected Appalachian's argument:

> We cannot say that plaintiff's petition unambiguously excludes coverage for damages allegedly caused plaintiff. The petition alleges a claim within the scope of the Civil Rights Act, Title 42 of the United States Code, Section 1983. Although plaintiff prayed for punitive damages only, the federal court is not restricted to such an award. The plaintiff may be granted any relief the court believes he is

entitled to, even if he has not demanded such relief in his pleading. Federal Rule of Civil Procedure 54(c); *Hawkins v. Frick-Reid Supply Corporation*, 154 F.2d 88 (5th Cir. Court of Appeal 1946); *Smoot v. State Farm Mutual Automobile Insurance Company*, 299 F.2d 525 (5th Cir. Court of Appeal 1962). Plaintiff's petition contains allegations, which if proven, would amply support the federal courts granting of compensatory damages.

■ Were we to sustain Home's contention that the policy is designed to cover only the defense of cases in which damages are sought we would be resolving a doubtful meaning in favor of the insurer and at the expense of the insured, against near universal authority to the contrary. *St. Paul Fire & Marine Ins. Co. v. Kell*, 231 Ark. 193, 328 S.W.2d 510 (1959). *Jefferson Insurance Company v. Hirchert*, 281 F.2d 396 (8th Cir. 1960).

■ Finally, Home's argument that it should not be required to defend because it cannot take whatever corrective measures might be imposed by the federal district court to bring the insured into compliance with the voting rights act is not convincing. Certainly Home will not be expected to revise election procedures or redraw voting precincts, as only the appropriate municipal officials can do those acts. Home's duty, however, is to defend under its policy weighing the pros and cons of the litigation in consultation with its insured, as it would do in other cases. If the federal plaintiffs prevail and mandatory orders issue, it will be the officials of Marianna who will take the necessary action, not Home.

■ Home's secondary argument is that genuine issues of material fact remain. We are not persuaded that that is so. One fact assertedly undecided deals with the issue of whether damages will result in the federal suit. But the duty to defend is broader than the duty to pay damages and as we have seen, it is enough if the *possibility* of damages exists. If injury or damage within the policy coverage could result, the duty to defend arises. *Commercial Union Ins. Co. v. Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977).

Another fact alleged to remain relates to a provision in Home's policy that it shall be excess insurance over other

collectible insurance and that the Municipal Legal Defense Program constitutes other valid insurance. Our decision in *Marianna v. Arkansas Municipal League, supra,* answers that contention.

Finally, Home urges that the appellees could have had knowledge of the wrongful acts prior to August 30, 1982, thereby defeating the requirements of the prior acts endorsement. But as appellees point out, all the acts relevant to the suit in federal court allegedly occurred during the coverage of the policy itself and are not dependent on the endorsement.

The order is affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. Whether The Home Indemnity Co. (Home) is required to defend this Voting Rights Act cause is a close issue, but I agree with the majority that Home is obligated to do so. I reach that conclusion primarily because the appellees, as the majority points out, remain potentially exposed to an award of damages until that voting rights litigation is terminated. *See Commercial Union Insurance Company of America v. Henshall,* 262 Ark. 117, 553 S.W.2d 274 (1977). In addition, Home's policy language is subject to some doubt or ambiguity in its interpretation concerning the company's obligation to defend under the circumstances posed here, and that doubt justifiably should be construed against the company issuing the policy.

Nevertheless, I cannot agree that Home's policy — under any construction or interpretation — can be read to mean the company agreed to pay any award of attorney's fees as damages. The plaintiffs, who brought the voting rights suit against appellees, are requesting not only that their voting rights be enforced, but also they request an award of reasonable attorney's fees. While the majority, by footnote in its opinion, states it is not deciding whether attorney's fees are damages within the meaning of Home's policy, it cites a number of cases in its opinion indicating that attorney's fees may be recovered as an item of damages. Such a proposition runs contrary to established Arkansas law. *See Romer v. Leyner,* 224 Ark. 884, 277 S.W.2d 66 (1955). In fact, both Arkansas case law and the other legal

authority cited by the majority fail to support such a holding. *See, e.g., Doyle* v. *Allstate Ins. Co.*, 154 N.Y.S.2d 10 (Ct. of App. of N.Y. 1956), cited by the majority, wherein the New York court concluded it was settled law that the legal expenses necessarily incurred by the plaintiff are not recoverable as general or special damages.

Thus, while I agree to affirm the trial court's decision holding that Home is obligated to defend appellees in the pending federal voting rights case against them, I wish to make my own position clear that I do not believe Home's policy covers the payment of attorney's fees as damages. Therefore, I concur.