MURPHY OIL USA, INC. *v.*
UNIGARD SECURITY INSURANCE COMPANY and
Employers' Surplus Lines Insurance Company,
*Appellees*; Employers' Surplus Lines
Insurance Company, *Cross-Appellant*;
Murphy Oil USA, Inc.; United States
Fidelity & Guaranty Company, *Cross-Appellees*

00-1408 61 S.W.3d 807

Supreme Court of Arkansas
Opinion delivered December 6, 2001
[Petition for rehearing denied January 10, 2002.]

*Compton, Prewett, Thomas & Hickey, PA*, by: *Robert C. Compton*; and *Wright, Lindsey & Jennings LLP*, by: *M. Samuel Jones, III* and *Claire Shows Hancock*, for appellant.

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *J. Leon Holmes* and *Steven W. Quattlebaum*, for appellee Unigard Security Insurance Company.

*James & Carter, PLC*, by: *Daniel R. Carter*; Of Counsel: *Rogers, Towers, Bailey, Jones & Gay*, by: *G. Kenneth Norrie* and *Cheryl L. Worman*; and *Christie, Pabarue, Mortensen and Young, a Professional Corporation*, by: *James W. Christie* and *Catherine Olanich Raymond*, for appellee Employers' Surplus Lines Insurance Company.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *John C. Calhoun, Jr.*, and *Phil Campbell*; and *Shaw Pittman*, by: *Frank Winston, Jr.*, for cross-appellee United State Fidelity & Guaranty Company.

*Henry C. Kinslow*, for *amicus curiae* City of El Dorado.

*Barrett & Deacon, P.A.*, by: *D. P. Marshall Jr.*; and *Wiley, Rein & Fielding*, by: *Laura A. Foggan, Daniel E. Troy*, and *Dineen P. Wasylik*, for *amicus curiae* Insurance Environmental Litigation Association.

*Rose Law Firm, a Professional Association*, by: *Richard T. Donovan* and *Garland J. Garrett*; *O.H. Storey, III*; and *Kathleen D. Gardner*, for *amici curiae* Mark Pryor, Attorney General, State of Arkansas; Anthony Forest Products Company; Anthony Timberlands, Inc.;

Arkansas Education Association; Arkansas State Chamber of Commerce; Arkla, Inc.; Associated Industries of Arkansas, Inc.; Deltic Timber Corporation; Dillard's, Inc.; Entergy Arkansas, Inc.; J.B. Hunt Transport, Inc.; The Poultry Federation; Riceland Foods, Inc.; Southwestern Energy Company; Tyson Foods, Inc.

ROBERT L. BROWN, Justice. Appellant Murphy Oil USA, Inc. appeals a grant of summary judgment in favor of appellee Unigard Security Insurance Company (Unigard) and appellee Employers' Surplus Lines Insurance Company (ESLIC).[1] In that summary judgment, the circuit court concluded that Unigard and ESLIC had no duty to defend their insured, Murphy Oil, in litigation brought by Harrison Brothers Dry Dock and Repair Yard. On appeal, Murphy Oil urges this court to reverse the summary judgment and then revisit and overrule our previous decision in *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998) (*Murphy I*). We agree with Murphy Oil that the summary judgment must be reversed, but we decline to overrule our previous decision. On cross-appeal, ESLIC contends that the circuit court erred in refusing to order cross-appellee Murphy Oil or cross-appellee United States Fidelity and Guaranty Company (USF&G) to reimburse it for costs advanced in two other lawsuits to Murphy Oil as part of its obligation to defend. We affirm the circuit court on the cross-appeal.

The underlying events which have led to several lawsuits against Murphy Oil were three petroleum spills at Murphy Oil's facility which occurred in 1970, 1975, and 1982. During those years, Murphy Oil occupied a facility which it leased from Blakely Corporation on Blakely Island, located in the Mobile River in Alabama. In 1970, Murphy Oil personnel overestimated the capacity of a tank and between 8,800 to 23,000 gallons spilled onto the ground. In 1975, between 22,000 and 26,000 gallons of gasoline leaked onto the ground because of a tank valve that was accidentally left open. In 1982, 4,600 gallons of diesel fuel leaked onto the ground through a corroded hole in the bottom of a tank. In April 1990, Blakely Corporation sued Murphy Oil in the Alabama federal district court for negligence, breach of the lease agreement, and trespass associated with the spills. The jury awarded Blakely $3.4 million in compensatory damages on the breach-of-lease claim but no damages for negligence or trespass. The jury also awarded $4.6

---

[1] The original style of this case was *Murphy Oil USA, Inc. v. United States Fid. & Guar. Co.*

million in punitive damages, which was subsequently reduced to $2 million. The total judgment in this litigation, when costs were included, was $5.8 million. This litigation in federal district court is referred to as *Blakely I.*

Murphy Oil then sued its liability carriers, including USF&G, Unigard, and ESLIC, in 1991 in Union County Circuit Court for indemnity associated with the *Blakely I* judgment. USF&G, as primary carrier, settled with Murphy Oil and paid the policy limits for the three years that the spills occurred. Following a jury trial, judgment for complete indemnity was entered in favor of Murphy Oil as against Unigard and ESLIC. Unigard and ESLIC appealed the judgment, and this court reversed in *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc., supra (Murphy I)*. In doing so, this court held as a matter of law that the Unigard and ESLIC insurance policies afforded Murphy Oil no coverage for liability based on the breach-of-lease claim.

During the pendency of Murphy Oil's appeal to this court in *Murphy I*, a second action by the Blakely Corporation was pending against Murphy Oil in the Alabama federal district court entitled *Blakely Corp. v. Murphy Oil USA, Inc. (Blakely II)*, in which Blakely sought a verdict for property damage caused by the three spills to an adjoining Blakely site. On March 11, 1996, the Union County Circuit Court held a hearing on Unigard's and ESLIC's duty to defend Murphy Oil in the *Blakely II* matter. Following the hearing, the court ruled from the bench:

> Of course, I have already ruled in the other case that there was a duty to defend, and I am going to make a similar ruling in this case that there is a duty on the part of ESLIC and Unigard to defend for the years 1970, '75 and '82 in the Blakely II matter.
>
> . . . .
>
> But it seems to me that the facts that are alleged are identical to what has been previously litigated. . . .

ESLIC then requested the circuit court to delay entering an order to that effect, so that it could add a cross-claim for the defense costs against USF&G. In *Blakely II*, summary judgment on the issue of Murphy Oil's liability for the spills was entered by the Alabama federal district court in favor of Murphy Oil. The summary judgment was affirmed by the Eleventh Circuit Court of Appeals. *See*

*Blakely Corp. v. Murphy Oil*, 141 F.3d 1189 (11th Cir. 1998) (unpublished table disposition).

Subsequently, a second amended complaint was filed in a third suit against Murphy Oil relating to the Blakely Island spills. This suit, entitled *Harrison Bros. Dry Dock & Repair Yard, Inc., et al. v. Murphy Oil USA, Inc.*, was filed in Mobile County Circuit Court in Alabama (*Blakely III*). In this suit, Harrison Brothers alleged claims of trespass, continuing trespass, nuisance, negligence, and wantonness, all relating to the "allow[ance of] petroleum products and/or other polluting, contaminating or hazardous substances to be discharged and/or released onto and into the ground, subsoil and/or ground water" on Murphy Oil's leased property that was located adjacent to the Harrison Brothers' property. Harrison Brothers also alleged that "[i]n or about August 1996, Plaintiffs discovered that the above described petroleum products and/or other polluting, contaminating or hazardous substances had migrated from the subject property onto Plaintiffs' property."

As a consequence of *Blakely III*, on April 24, 1999, Murphy Oil filed a seventh amended complaint in the ongoing action in the Union County Circuit Court and prayed for a declaratory judgment that both Unigard and ESLIC be obligated to defend Murphy Oil and to indemnify it for the defense costs incurred in its defense in *Blakely III*.[2] ESLIC answered and counterclaimed seeking a declaration that it did not have a duty to defend or indemnify Murphy Oil in either *Blakely II* or *Blakely III*. ESLIC further sought a judgment for defense costs paid to Murphy Oil under a reservation of rights in *Blakely II* and *III*.

In May 1999, Murphy Oil filed an amended and supplemental motion for partial summary judgment in Union County Circuit Court in which it requested the court to order Unigard and ESLIC to pay Murphy Oil's defense costs in *Blakely III*. Murphy Oil argued that *Blakely III* involved the same spills and many of the same issues as *Blakely I* and *Blakely II*. Thus, it argued, Unigard and ESLIC, as umbrella carriers, had a contractual duty to defend it which they inherited from the primary carrier, USF&G, which had already paid policy limits. Murphy Oil further asserted in its brief in support of the amended partial summary-judgment motion that the

---

[2] The Union County litigation had been continued as an ongoing matter since Murphy Oil first sued its liability carriers following *Blakely I* in 1991.

Harrison Brothers complaint in *Blakely III* plainly stated a claim that could activate the policy coverage of Unigard and ESLIC.

ESLIC responded to Murphy Oil's amended motion for partial summary judgment and cross-motioned for summary judgment for the reimbursement of defense costs paid to Murphy Oil, or, alternatively, for reimbursement of those costs from USF&G. ESLIC then filed a Combined Motion and Brief in Support of Summary Judgment as to *Blakely III*, in which it claimed that due to the Alabama statute of limitations on claims involving property damage and ESLIC's policy's definition of the term "occurrence," there could be no coverage under the policy and, thus, no duty to defend or indemnify.

On October 12, 1999, Unigard filed a Motion for Summary Judgment in which it alleged that the *Blakely III* complaint asserted a migration of contaminants and that migration is a slow process which would cause the event to be excluded under the Pollution Exclusion to its policy. Unigard submitted an affidavit in support of its motion from Dr. Gary R. Walter, a professional hydrogeologist, as well as the testimony of Jane Spellman, another hydrogeologist, who was Murphy Oil's expert witness.

On May 8, 2000, a hearing was held on the various motions. At the close of the hearing, the circuit court ruled:

> I understand that all these issues were raised back in '93, and I ruled in favor of Murphy on [them]. This set of facts is a little bit different. I'm going to grant summary judgment on both based upon the —
>
> . . . .
>
> — based upon the exclusionary provision of the policies that this was classic pollution, and the language is rather clear to the Court that they excluded coverage, and that ends the issue in my eyes on this particular fact situation — which is different from the previous case.
>
> . . . .
>
> And I'm persuaded by the language and the discussion in this *Bell* [*Lumber & Pole Co. v. United States Fire Ins. Co.*, 60 F.3d 437 (8th Cir. 1995)] case also.

. . . .

> Yes, I think [other pending motions] would be [moot] because this is a coverage question, and I have ruled that there's no coverage so duty to defend and all those would be out . . . the window.

In the resulting order of summary judgment, the circuit court made the following findings:

- there is no genuine issue of material fact;

- as a matter of law the insurance policies do not provide coverage for the claims asserted in *Blakely III*;

- Unigard and ESLIC are entitled to judgment as a matter of law on the claims asserted by Murphy Oil in its Seventh Amendment to Complaint that the carriers had an obligation to defend; and

- after hearing arguments of counsel, the Court denies ESLIC's request for reimbursement of the defense costs it has paid in *Blakely II* and *Blakely III*.

Murphy Oil brings this appeal, and ESLIC brings its cross-appeal.

### I. Summary Judgment on Duty to Defend

Murphy Oil mounts a legion of arguments as to why summary judgment in favor of Unigard and ESLIC on their duty to defend was error.[3] We are persuaded, however, that Murphy Oil is correct that neither policy's Pollution Exclusion negates the duty to defend of the respective carrier.

We first address the test for determining a liability carrier's duty to defend. In examining the duty to defend, this court has recognized the general rule that the allegations in the pleadings

---

[3] We do not consider Murphy Oil's appeal from the denial of its motion for partial summary judgment. We have held repeatedly that appeals from a denial of a motion for summary judgment do not lie. *See, e.g., Ball v. Foehner*, 326 Ark. 409, 931 S.W.2d 142 (1996); *Rick's Pro Dive 'N Ski Shop, Inc. v. Jennings-Lemon*, 304 Ark. 671, 803 S.W.2d 934 (1991).

against the insured determine the insurer's duty to defend. *See Mattson v. St. Paul Title Co. of the South*, 277 Ark. 290, 641 S.W.2d 16 (1982); *Fox Hills Country Club, Inc. v. American Ins. Co.*, 264 Ark. 239, 570 S.W.2d 275 (1978); *Commercial Union Ins. Co. of America v. Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977). Additionally, this court has recognized that the duty to defend is broader than the duty to indemnify. *See Commercial Union Ins. Co. of America v. Henshall, supra.* However, the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. *See Home Indemnity Co. v. City of Marianna*, 291 Ark. 610, 727 S.W.2d 375 (1987). Conversely, where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend. *See* C.T. Drechsler, Annotation, *Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend*, 50 A.L.R.2d 458 (1956). The *Home Indemnity Co.* case summarizes much of this law:

> Home's secondary argument is that genuine issues of material fact remain. We are not persuaded that that is so. One fact assertedly undecided deals with the issue of whether damages will result in the federal suit. But the duty to defend is broader than the duty to pay damages and as we have seen, it is enough if the *possibility* of damages exists. If injury or damage within the policy coverage could result, the duty to defend arises. *Commercial Union Ins. Co. v. Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977).

*Home Indemnity Co.*, 291 Ark. at 618, 727 S.W.2d at 379. Accordingly, this court must examine whether the *Blakely III* complaint alleges facts which would come within the coverage of the Unigard and ESLIC liability policies. If so, their duty to defend arises.

Unigard relies on its Pollution Exclusion in its liability policy for its argument that there is no possibility that Unigard will be called upon to indemnify Murphy Oil. It further relies on the two opinions by the hydrogeologists submitted with its motion for summary judgment that migration caused the damage to the Harrison Brothers' property. We turn then to that exclusion in the liability policy to assess the potential for Unigard's liability. That section reads:

> SEEPAGE, POLLUTION AND CONTAMINATION
> EXCLUSION CLAUSE
>
> IT IS UNDERSTOOD AND AGREED THAT EXCEPT INSOFAR AS COVERAGE IS AVAILABLE TO THE

ASSURED IN THE UNDERLYING INSURANCES AS SET OUT IN THE SCHEDULE OF UNDERLYING POLICIES, THIS INSURANCE SHALL NOT APPLY TO ANY LOSS ARISING OUT OF CONTAMINATION OR POLLUTION.

NOTWITHSTANDING THE FOREGOING, IT IS UNDERSTOOD AND AGREED THAT THIS INSURANCE DOES NOT APPLY TO PERSONAL INJURY OR PROPERTY DAMAGE ARISING OUT OF THE DISCHARGE, DISPERSAL, RELEASE OR ESCAPE OF:

(1) SMOKE, VAPORS, SOOT, FUMES, ACIDS, ALKALIS, TOXIC CHEMICALS, LIQUIDS OR GASES, WASTE MATERIALS OR OTHER IRRITANTS, CONTAMINANTS OR POLLUTANTS INTO OR UPON LAND, THE ATMOSPHERE OR ANY WATERCOURSE OR BODY OF WATER, BUT THIS EXCLUSION DOES NOT APPLY IF SUCH DISCHARGE, DISPERSAL, RELEASE OR ESCAPE IS SUDDEN AND ACCIDENTAL;

(2) OIL OR OTHER PETROLEUM SUBSTANCE OR DERIVATIVE (INCLUDING ANY OIL REFUSE OR OIL MIXED WITH WASTES) INTO OR UPON ANY WATERCOURSE OR BODY OF WATER, WHETHER OR NOT SUCH DISCHARGE, DISPERSAL, RELEASE OR ESCAPE IS SUDDEN AND ACCIDENTAL.

Thus, the Unigard Pollution Exclusion contains an exception, and it is that exception upon which the resolution of this case turns. The exception reads: "but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]" Murphy Oil contends that the 1975 spill during Unigard's coverage qualifies as a sudden and accidental release and that this is what caused the alleged damage to Harrison Brothers in *Blakely III*. Specifically, Murphy Oil emphasizes that the Harrison Brothers complaint bases its causes of action on the release of polluting substances onto the ground or into the ground water of the Murphy Oil leased property. Hence, Murphy Oil contends, the "release" in question relates to the three sudden and accidental spills, and this triggers the exception to the Pollution Exclusion and Unigard's liability for coverage. Unigard, on the other hand, focuses on events after the three spills and the alleged migration of the polluting substances from the Blakely property to the Harrison Brothers property over a period of years.

■ Truthfully, the Pollution Exclusion and its exception could be read either as Murphy Oil interprets it or in accordance with Unigard's reading. The test, however, is whether the mere possibility of coverage exists in this case. *See Home Indemnity Co. v. City of Marianna, supra.* We are mindful also of the principle that in testing the pleadings to determine if they state a claim within the policy coverage, we resolve any doubt in favor of the insured. *See Mattson v. St. Paul Title Co. of the South, supra.* We hold that there is a possibility that Unigard will be liable for coverage as a result of *Blakely III* based on the fact that the triggering spills may fall within the exception to the Pollution Exclusion. Accordingly, the duty to defend Murphy Oil comes into play. With regard to Unigard's contention that Murphy Oil failed to meet proof with proof because it did not counter the affidavits of the two hydrogeologists, we do not view those affidavits as determinative. Resolution of this case centers on the facts alleged and the policy language, and specifically on the Pollution Exclusion, and not on the fact that migration may have occurred.

■ Our analysis is similar with respect to ESLIC. The applicable Pollution Exclusion in ESLIC's policy reads:

Endorsement #4
It is agreed that this policy does not cover any liability for: —

. . . .

(3) Property damage caused by seepage, pollution or contamination, unless such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance, but this paragraph (3) shall not be construed as excluding any liability which would otherwise be covered under this Insurance for property damage caused by a sudden, unintended and unexpected happening during the period of this Insurance arising out of seepage, pollution or contamination.

Again, the exception to the exclusion is for damage caused by "a sudden, unintended and unexpected happening during the period of this Insurance arising out of" the pollution. In our opinion, this exception can be read as being broader than the exception in the Unigard policy. Regardless, Murphy Oil and ESLIC cross swords over whether the "sudden happening" refers to the initial spill in 1970 or to the alleged damage caused by the subsequent migration

of the contaminants. For the same reasons stated above, we believe the language can be legitimately read either way.[4] Moreover, the doctrine of *contra preferentum* would lead towards an interpretation of the exception favorable to Murphy Oil. *See, e.g., Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). As a final point, we are not aware of a decision by the Alabama trial court in *Blakely III* concerning any applicable Alabama statute of limitations and the impact of that limitations statute on ESLIC's liability for coverage in the Harrison Brothers litigation. Once again, we hold that the possibility of liability coverage exists and that, as a result, ESLIC also has a duty to defend Murphy Oil in *Blakely III*.

We note where the circuit court relied on the case of *Bell Lumber & Pole Co. v. United States Fire Ins. Co.*, 60 F.3d 437 (8th Cir. 1995), in reaching its decision. The *Bell Lumber* case involved an action for declaratory judgment regarding the liability of insurance carriers and a motion for summary judgment by those carriers. In that case, the Pollution Exclusion and exception in the affected policy were comparable to the language in Unigard's policy. There were fifteen polluting events which involved tank overfills and cracks and leaks in the containers. The damage to property occurred after the contaminants entered the groundwater of a third party, the State of Minnesota, which occurred gradually over many years. The debate centered on whether the release or escape of the contaminants was sudden and accidental so as to fit within the exception or a gradual event which would fall under the general Pollution Exclusion. The trial court entered summary judgment in favor of the insurance carriers. The Eighth Circuit affirmed and concluded that Bell Lumber's liability was triggered only when damage was done to the property of the third party, that is, when the contaminant entered the groundwater of the state of Minnesota. Thus, the "release" envisioned by the exception was when the damage to the state's groundwater occurred and not the initial events when the contaminant leaked or poured onto the ground. In holding as it did, the Eighth Circuit rejected as *dicta* an assumption by the Minnesota Court of Appeals in a previous case that the relevant release under the exception was the initial spill onto the ground.

---

[4] The appellees argue that at one point in this extensive litigation Murphy Oil contended the language was not ambiguous. Determination of whether ambiguity exists in policy language is ordinarily a question of law for the courts to resolve. *See Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001).

■ This court, of course, is not bound by the precedent of the Eighth Circuit Court of Appeals. *See, e.g., Romine v. Arkansas Dept. of Env. Quality*, 342 Ark. 380, 40 S.W.3d 731 (2000). But, in addition, the *Bell Lumber* case concerned only the ultimate issue of indemnity coverage and not the issue of an insurance carrier's obligation to defend. Plus, even in the *Bell Lumber* case, it was noted that different courts had voiced different opinions as to what was the relevant release. *See also Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189 (Pa. 2001) (proof of custom in the insurance industry may indicate that the "sudden and accidental" exception to the Pollution Exclusion meant "unexpected" and "unintended" and not a requirement of abruptness). Our focus in this appeal is on whether the *possibility* exists for indemnity by Unigard and ESLIC based upon the facts alleged. Using this liberal standard, we cannot conclude that that possibility does not exist.

Nor do we believe that this court's decision in *Murphy I* resolves this issue in favor of Unigard and ESLIC, as the appellees would have it. The parties were different in the underlying case of *Blakely I*, and the rationale for reversal by this court was that the jury-awarded damages for breach of a lease, not property damage. At this stage, we can only speculate as to the basis for a jury award, if any, in *Blakely III*.

Finally, we are cognizant of the case of *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986). In that case, the North Carolina Supreme Court concluded that the liability carriers had no duty to defend their insured, Trash Removal Services, Inc., against a third-party complaint that Trash Removal Services had delivered hazardous waste to a landfill over a six-year period that resulted in contamination of groundwater beneath the landfill. The policies of Peerless Insurance Company and Pennsylvania National Mutual Casualty Insurance Company had comparable language to that in the policies of Unigard and ESLIC. What distinguishes the *Waste Mgmt.* case, however, from the facts of the present case is that a "sudden release" of contaminants was not alleged in the *Waste Mgmt.* matter. On the other hand, as already stated in this opinion, Harrison Brothers did allege that Murphy Oil allowed "polluting, contaminating or hazardous substances to be discharged and/or released onto and into the ground" that Murphy Oil was leasing. That allegation certainly could embrace a sudden release such as occurred during the period of ESLIC's coverage in 1970 or during the course of Unigard's coverage in 1975.

■ We reverse the circuit court on this point and hold that Unigard and ESLIC have a duty to defend Murphy Oil in *Blakely III* during their periods of respective coverage.

## II. Revisiting Murphy I

Murphy Oil next urges that this court should revisit and over-rule our decision in *Murphy I*. The crux of Murphy Oil's argument is that because the California Supreme Court ruled in favor of the policyholder in a similar case and this court was misled in *Murphy I*, we should correct our mistake.

■ We find Murphy Oil's initial premise, which is based on law of the case, to be faulty. The underlying litigation for *Murphy I* was *Blakely I*, and we are convinced that *Blakely III* and *Blakely I* are not the same case. The parties are different, and we can only speculate as to what the triggering spills for liability may be in *Blakely III*, because that is not altogether clear from the *Harrison Brothers* complaint. Migration is also alleged in *Blakely III*, but was not a factor in *Blakely I*. Furthermore, the liability of Murphy Oil has yet to be decided in *Blakely III*, much less the grounds for that liability. In sum, we do not believe that the doctrine of law of the case applies to these circumstances for a reason different than that posited by Murphy Oil.

■ Having said that, to the extent Murphy Oil is urging the reversal of a three-year-old case based on a 1999 California decision [*Vandenberg v. Superior Court*, 21 Cal. 4th 815, 982 P.2d 229, 88 Cal. Rptr. 2d 366 (1999)], we decline to do so. In *Thiel v. Priest*, 342 Ark. 292, 28 S.W.3d 296 (2000), this court noted that while it does have the power to overrule prior decisions, it is necessary, as a matter of public policy, to uphold those decisions unless a great injury or injustice would result. *See id.* (citing *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996)). In *Thiel*, we noted that "[t]he United States Supreme Court has recognized that adherence to precedent promotes stability, predictability, and respect for judicial authority." *Id.* at 300, 28 S.W.3d at 300 (citing *Sanders, supra; Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999)). In *Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001), we made similar statements regarding *stare decisis*:

> As a general rule, we are bound to follow prior case law under the doctrine of *stare decisis*, a policy designed to lend predictability and stability to the law. *State Office of Child Support Enforcem't v. Mitchell,*

330 Ark. 338, 343 (1997) (citing *Parish v. Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968) (superseded by statute on other grounds)). Indeed, it is well-settled that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Mitchell*, 330 Ark. at 343 (quoting *Parish*, 244 Ark. at 1252). Our test is whether adherence to the rule would result in "great injury or injustice." *Mitchell*, 330 Ark. at 343 (quoting *Independence Fed. Bank v. Webber*, 302 Ark. 324, 331, 789 S.W.2d 725, 730 (1990)).

*Aka*, 344 Ark. at 641, 42 S.W.3d at 518.

 It is our belief that overruling precedent after three short years would lend instability to our common law. It is true that differing views were expressed in *Murphy I*, evidencing the point that justices could differ dramatically over the law and the result in the case. We cannot, however, conclude that our opinion in *Murphy I* attains the high standard of patent error or manifest injustice necessary for us to overrule this precedent.

### III. Cross-Appeal by ESLIC

a. Murphy Oil.

 ESLIC contends in its cross-appeal that because of this court's decision in *Murphy I*, there could be no potential for indemnity in *Blakely II* and *Blakely III*.[5] We disagree. We have already held in this opinion that *Murphy I* does not control this issue and that the possibility for indemnity coverage by ESLIC exists with regard to the facts alleged in *Blakely III*, and, thus, the duty to defend is triggered.

 Moreover, in *Blakely II*, Murphy Oil prevailed, and so the question of indemnity coverage was not at issue. On the duty to defend, the circuit court ruled in *Blakely II* that ESLIC had that duty, and no effort was taken by ESLIC to appeal that ruling. It is simply too late to appeal that issue in connection with the circuit

---

[5] It is somewhat unclear whether ESLIC is appealing from a denial of its motion for partial summary judgment or an adverse order relating to its prayer for declaratory relief in its counterclaim. We will treat this as an appeal from the latter. As previously mentioned in this opinion, this court does not countenance appeals from denials of motions for summary judgment. *See Rick's Pro Dive 'N Ski Shop, Inc. v. Jennings-Lemon*, 304 Ark. 671, 803 S.W.2d 934 (1991).

court's order in *Blakely III*, which, as has already been stated in this opinion, involved different parties and different facts.

 Costs incurred by ESLIC in each case in defending Murphy Oil were appropriate. We affirm the circuit court on this facet of the cross-appeal.

b. USF&G.

ESLIC further contends that regardless of whether USF&G has exhausted its primary coverage for the three spill years, one of which was 1970, it has not done so for the other years in which it insured Murphy Oil. According to ESLIC, the *Blakely II* and *Blakely III* complaints precipitated USF&G's duty to defend for those additional years in which additional spills may have occurred; thus, it has an obligation to reimburse ESLIC in the amount of $113,432.42 for defense costs paid in connection with *Blakely II*. ESLIC also prays that this court remand the case with instructions to the circuit court to allocate the costs required to defend Murphy Oil in *Blakely III* between USF&G and ESLIC.[6]

 We see no reason to reverse the circuit court on this point in connection with either *Blakely II* or *Blakely III*. USF&G paid the policy limits for 1970 for the 1970 spill, at which time ESLIC had umbrella coverage, and also paid the policy limits for the spills in 1975 and 1982. Saddling USF&G with a duty to defend for additional, unspecified spills in unnamed years would require this court to enter the realm of gross conjecture and speculation. It is further notable that neither USF&G nor ESLIC maintains that it had any exposure for those years when the contaminant was allegedly migrating as opposed to its initial release. The only conceivable exposure could be for a sudden event such as the 1970 spill, and USF&G exhausted its coverage for that occurrence. Under these facts, there is no additional duty to defend on the part of USF&G.

We affirm the circuit court on this point as well.

Direct Appeal reversed and remanded.

Cross-Appeal affirmed.

---

[6] According to ESLIC, it should only be liable for one year (1970) out of the twenty-four years since the spill, and USF&G should be liable for the balance.

GLAZE and CORBIN, JJ., not participating.

SPECIAL JUSTICE CHARLES A. BANKS joins.

SPECIAL JUSTICE W.H. "SONNY" DILLAHUNTY joins.